## HILLMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5244.

Circuit Court of Appeals, Third Circuit.

June 4, 1934.

Thomas Watson, of Pittsburgh, Pa., for petitioner.

Walter L. Barlow and John H. McEvers, both of Washington, D. C., for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case it appears the taxpayer had been the owner of a residence in the Shady Side district of Pittsburgh. Without entering into details, it suffices to say that real estate and residential factors brought about a condition that once very desirable and income producing residences had so changed that these properties produced rentals which barely paid the taxes on the property. We thus have a state of affairs where the taxpayer's property was of no income value. In that predicament the taxpayer, evidently with the purpose of dividing the property amongst the family and creating a situation which provided for his minor children in the family home in case of either his or his wife's death, conveyed the property to a family corporation whose entire stock was owned in substantial amounts by his wife, his minor children, and himself. From other property given by him to this family corporation he thus provided that his own funds should pay the taxes on the family occupied home. Such being the case, the Commissioner, on the theory that in carrying out the plan an additional income of $23,558.07 accrued to the taxpayer, surcharged him with that sum as income. On appeal, the Tax Board found the rental value of the property was but $4,860.10, and surcharged the taxpayer with the latter sum as income.

How the Tax Board could find the rental income value of the property was even this smaller sum, when the uncontradicted proof was that the taxes, $4,860.10, on the property absorbed its entire rental value, we are unable to discover. But assuming for present purposes the property had a rental value in excess of the taxes and that the owner of the property, in this case the family corporation, was taxable with such value, we fail to see how the rental of the property was income to the taxpayer. Moreover, it is apparent that, if any such ground existed, it must necessarily be based on the fact that the family corporation could have collected such rent from the taxpayer by virtue of a contract, express or implied, and that the omission by the family corporation to collect such contracted rent saved the taxpayer from paying it and therefore was income to him because it was not outgo. Now there is no pretense of an express contract on his part to pay rent. Was there an implied contract? As we have said, the whole situation was a family one, although it took corporate form, and, as such, the law implies no contract where family matters are concerned, even though there might be an implied obligation to pay for rent and occupation were the situation one of strangers dealing at arm's length. This principle has always been recognized in Pennsylvania. In Sterrett v. Wright, 27 Pa. 260, the Supreme Court said:

"When one person receives anything of value from another, the law implies a promise that he who receives it will pay what it is worth. But this rule has its exceptions. A son, for instance, cannot charge for labour bestowed about his father's business, and a parent, or one standing in loco parentis, cannot recover for the maintenance of a child without distinct and clear proof of an agreement to pay. Why do we make this exception to the general rule? One reason is, the policy which forbids us to lend any countenance to family disputes, and which commands us to encourage and foster the harmony and confidence which ought to subsist between parents and their children while dwelling together under the same roof. We have another ground for it. There is a natural presumption that these mutual services are rendered by different members of the same family from a better motive than the

expectation of mere pecuniary rewards. The law, unless upon overruling considerations of policy, will not presume that to be true which common experience shows to be generally false. No contract can therefore be implied to pay for those things which it is the universal custom to give gratuitously. A person who stops at a tavern is liable to an action if he does not discharge the reckoning before he goes away; but one who visits his relative incurs no obligation to pay for his entertainment; the difference being that in the former case a charge is always made, and in the latter nobody ever thinks of a bill."

In that connection see cases cited on page 469 of 29 Pa. (Hertzog v. Hertzog).

We accordingly hold the order of the Tax Board should be vacated.