## CHANDLER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7550.

Circuit Court of Appeals, Third Circuit.

April 14, 1941.

624

Guilford S. Jameson, of Washington, D. C. (Henry A. Mulcahy, of New York City, on the brief), for appellant.

L. W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

By petition to review the decision of the Board of Tax Appeals redetermining deficiencies in his income taxes for 1934 and 1935 imposed by the Commissioner of Internal Revenue, Percy M. Chandler asks us to determine that it was error to treat as taxable to him income derived from a trust of which he was the settlor, the rental value of a family residence at Poc pson, Chester County, Pennsylvania, furnished to him rent free by a corporation controlled by him and to which he rendered valuable services, the expenses paid by the corporation for the maintenance of that residence and the rent and assessments paid by the trustee in respect of an apartment on Park Avenue in New York City.

The Trust Income. The trust agreement with which we are concerned was entered into in New York on February 8, 1930, by Chandler as settlor, Guaranty Trust Company of New York as trustee, and Chandler's wife as beneficiary. By the trust agreement Chandler transferred to the trustee certain policies of insurance on his life together with certain securities and leases, including, inter alia, 1302 shares of

the capital stock of 290 Park Avenue, Inc., a lease dated December 22, 1921, of an apartment and servants' rooms at 280-296 Park Avenue, New York City, a sublease dated March 12, 1928, of two of the servant rooms, and 100 shares of the common stock of the Brandywine Farms Corporation. The first question which arises is whether the income from the trust securities is taxable to Chandler. The Board held that it was. Its decision was grounded upon the second paragraph of article seventh of the trust agreement, which is as follows:

"During the lifetime of Grantor, Trustee shall make such sale, exchange or other disposition either to Grantor or to a third party or third parties designated by him of all or any part of the Trust Fund and for such considerations and upon such terms as to credit or otherwise as Grantor shall at any one time or from time to time direct. Trustee shall also acquire by purchase, exchange or otherwise such real or personal property for such considerations and either from Grantor or from such third party or third parties as Grantor may at any one time or from time to time direct. Grantor may be personally interested in the sale, exchange or other disposition of any part of the Trust Fund and/or in the purchase, exchange or other acquisition of real and/or of personal property for the Trust Fund. Trustee shall at all times and forever be freed from any and all liability and responsibility for acting in accordance with such directions of Grantor."

The Board found that Chandler could so exercise the power reserved (by the provisions just quoted) to himself as grantor as to direct a sale of trust securities to himself at less than their real value and to that extent revest title in the trust corpus in himself. As to the Park Avenue apartment shares and lease and the Brandywine Farms Corporation shares it reached a different conclusion because it construed articles third and fourth of the trust agreement as directing their preservation as trust property and thus placing them beyond the power of the grantor. The Board concluded that the trust was revocable within the definition of section 166 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 727, and, therefore, that the income from the trust corpus, except such income as was derived from the two groups of securities just mentioned, was taxable to Chandler.

Chandler argues that to construe the seventh article of the trust agreement so as to permit him to reacquire the trust property at less than its value runs counter to the equitable principles regulating the conduct of trustees and is, therefore, unwarranted. His position is that by the law of New York, the trustee is under a duty to refuse compliance with such directions, despite the broad scope of the power retained by him to control the trustee and to direct trust investments. Carrier v. Carrier, 226 N.Y. 114, 123 N.E. 135; Osborn v. Bankers Trust Co., 168 Misc. 392, 5 N. Y.S.2d 211. In so contending, however, Chandler overlooks an important distinction between the power reserved by him and the powers reserved by the settlors in the cases cited. In those cases the power to control reserved by the settlor did not include the power to direct the trustee to buy from and sell to the settlor at prices fixed by the latter. It thus appeared that the power was reserved for the benefit of the beneficiaries of the trust and it was accordingly held that the holder of the power held it as a fiduciary and was restricted in his exercise thereof by the ordinary equitable principles regulating the conduct of fiduciaries. If, however, the power is reserved for the benefit of the settlor there is no such restriction. In that event the only duty of the trustee is to ascertain whether the exercise of the power is within the terms of the agreement. Restatement, Trusts, § 185 and comments (c), (d) and (e) thereto.

In the present case there can be no doubt that the power to control reserved by Chandler was for his own benefit. In addition to broad powers of directing investments by the trustee, such as were present in the trust instrument in Carrier v. Carrier, supra, Chandler reserved to himself the right to sell to or buy from the trust estate at his own price and to direct the disposition to himself (other than by way of sale or exchange) of all or any part of the trust fund for such consideration and upon such terms as he might direct. We think that the reservation by the settlor of the power to deal with the trust assets for his own benefit is irreconcilable with the fundamental principle underlying all fiduciary relationships that the fiduciary must act solely in the interest of the cestui que trust and, therefore, may not have personal dealings with the trust property. Restatement, Trusts, § 170 and comments

thereto. As owner of the assets Chandler, of course, had the right to reserve such a power. His doing so clearly indicates that he did not intend to impose upon himself fiduciary restraints enforcible by the trust beneficiaries. We think that the Board was entirely justified in construing the power as a reservation by the settlor of the right to revoke the trust.

Chandler contends that at least inferentially the Board has decided that the power to revoke which it found in article seventh extended to the life insurance policies transferred to the trustee by him and that this is an erroneous decision because article second of the trust instrument, which applies specifically to the policies, makes the transfer absolute and irrevocable. We do not think that the Board made any determination on this point, since it is conceded that no income was derived from the insurance policies during the taxable years in question and the sole issue for the Board to decide was whether the Commissioner had erred in his determination of Chandler's income. Consequently this question remains open and need not be considered further upon this review.

Rental Value of Brandywine Lodge. Brandywine Farms Corporation was organized in 1926. Chandler owned all its capital stock from 1926 until February 8, 1930, when he transferred all the shares to the trust herein involved. The main business of the corporation consisted in the purchase and sale of stocks. It also owned approximately 450 acres of farm land at Pocopson, Chester County, Pennsylvania. During the taxable years 1934 and 1935 Chandler and his family occupied Brandywine Lodge, a dwelling house located upon this property, rent free. Its reasonable rental value was stipulated to be $4,000 per annum. Chandler performed substantial services for the corporation and was its president during the taxable years in question. The Commissioner included the rental value of the residence in Chandler's gross income. The Board found that the privilege of using the Lodge rent free was given to Chandler by the corporation not as a gratuity but as compensation for the services which he rendered and that the value of that privilege was therefore properly included as income.

Somewhat similar situations existed in Hillman v. Commissioner, 3 Cir., 71 F.2d 688 and Richards v. Commissioner, 5 Cir., 111 F.2d 376, which are cited to us by Chandler. In the Hillman case the taxpayer conveyed property to a family corporation whose entire stock was owned by the taxpayer, his wife and children. The taxpayer and his family occupied rent free a house owned by the corporation which paid the taxes out of corporate income. The Commissioner included the estimated rental value of the family residence in the taxpayer's gross income; the Board sustained the Commissioner except that it reduced the amount of the rental value. This court reversed on the ground that in the absence of an express agreement to pay rent none may be implied, since the parties involved were all members of the family. In the Richards case the taxpayers, husband and wife, owned all the stock of a corporation which held title to two residences occupied by the taxpayers and their children rent free. The purpose of having title in the corporation was to create interests which were readily transferable in the event of the death of either or both taxpayers. The Commissioner included the rental value in the taxpayers' income, and was sustained by the Board. The Circuit Court of Appeals reversed, the majority holding that the rent free use of the residence was a gift.

Chandler relies upon the Hillman and Richards cases as authority for his position that the rental value of a house occupied by the taxpayer as a family residence rent free, where title is held by a family corporation controlled by the taxpayer, is not income to him. It is possible to distinguish these cases, for in neither was there a finding by the Board such as was made in the present case that the right to occupy the house rent free was granted by the corporation as compensation for services rendered by the taxpayer. Of greater significance, we think, is the fact that this court in the Hillman case and the Circuit Court of Appeals for the Fifth Circuit in the Richards case failed to give any effect to the separate existence of the corporation holding title to the property. As indicated in the dissenting opinion in the Richards case corporations are separate taxpayers whose existence as entities separate from their stockholders is seldom ignored in tax matters. See White's Will v. Commissioner, 3 Cir., 119 F.2d 619. A corporate officer or stockholder may receive the right to use corporate property rent free in lieu of a money compensation for services rendered or as a dividend, but it may not be presumed that the corporate directors have

given away as a gratuity a valuable right to use the corporate property. Ordinarily such action would be beyond their power. Noel v. Parrott, 4 Cir., 15 F.2d 669, certiorari denied, 273 U.S. 754, 47 S.Ct. 457, 71 L.Ed. 875; Wolter v. Johnston, 3 Cir., 34 F.2d 598, 68 A.L.R. 1211, certiorari denied, 280 U.S. 606, 50 S.Ct. 153, 74 L.Ed. 650; Fletcher, Cyc.Corp., Perm.Ed., § 2939. Reasoning such as that advanced in the Hillman case that a gift is presumed because of the family relationship between the parties overlooks, we think, the fact that a corporation is not "related" to its stockholders, directors and officers. That purely artificial modern concept, the stock company, does not form a segment in the oldest of all human relationships, the family circle. The corporate "person" may be deemed by a fiction of the law to have abilities normally ascribed to man but that fiction cannot be indulged to the extent of endowing the corporation with feelings of love and affection for its stockholders, officers and directors. It is only because of the love and affection which a normal human donor feels for members of his family that it is presumed by the law that a transfer of property by him to them is a gift. The basis for such a presumption is entirely absent when the donor is a corporation. We are not persuaded by the rationale of either opinion and insofar as Hillman v. Commissioner, supra, is in conflict with our decision it is overruled.

Chandler argues that the Board erred in finding that the right to occupy Brandywine Lodge rent free was compensation and claims that this right arose by reason of the express terms of the trust agreement, but in this contention he again ignores the fact that the corporation which provided the Lodge is a separate entity which is not a party to the trust agreement. We conclude that the rental value of Brandywine Lodge was properly included in Chandler's income.

**Maintenance Expenses of Brandywine Lodge.** Brandywine Farms Corporation paid the following maintenance and operating expenses during 1934 and 1935:

|  | 1934 | 1935 |
|---|---|---|
| General expense | $ 288.22 | $ 366.54 |
| Oil and gas | 1241.79 | 1257.08 |
| Stable supplies | 222.70 | 158.05 |
| Coal | 89.76 | 75.68 |
| Auto expense | 206.78 | 175.68 |
| Garden supplies | 952.91 | 376.17 |
| Telephone | 421.34 | 363.16 |
| Electricity | 722.01 | 605.13 |
| Fertilizer and feed | 75.95 | 96.30 |
| Poultry expense | 254.10 | 337.18 |
| Stable food | 313.39 | 225.95 |
| Household salaries | 6045.75 | 4650.00 |
| Total | 10,834.70 | 8,686.92 |

The Board allocated to the corporation as ordinary and necessary expenses in carrying on its business the following:

|  | 1934 | 1935 |
|---|---|---|
| General expense | $144.11 | $183.27 |
| Fertilizer and feed | 75.95 | 96.30 |
| Household salaries | 432.00 | 432.00 |
| Total | $652.06 | $711.57 |

Everything in excess of these operating expenses of the corporation was treated by the Commissioner as maintenance expenses for Chandler's residence, and consequently as his income. The Commissioner was sustained by the Board, which deemed these expenditures "personal, living, or family expenses" of Chandler within the meaning of Section 24(a) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts page 675, which had the effect of discharging his family obligations.

Chandler contends that the burden was upon the Commissioner to establish the relative sums expended for the Lodge property and the farm property as a whole, that the Commissioner did not meet this burden and that the Board had no basis for the allocation which was made. The Board based its allocation upon the testimony of Harry D. Brown, Jr., the treasurer of Brandywine Farms Corporation for 1934 and 1935. It accepted his estimate that 50% of the item designated general expenses, 40% of the salary of one of the farm employees and all of the costs for fertilizer and seed were expended on behalf of the farms. He also testified that all of the expenditures for stable food, and the bulk of the oil and gas expenditures were for the Lodge and the home of the overseer. There is no direct testimony that the remaining expenditures were for the Lodge but the very nature of some of the expenditures makes this a reasonable conclusion. As to them the Board had to speculate to a certain extent in order to make its allocation. It is significant that Chandler, who is in the best position to know if any of the expenditures allocated to the Lodge were in fact for the farm, has not attacked the Board's action save in very general terms. We conclude that the Board was justified in the allocation which it made.

■ Chandler argues that no part of these expenditures was income to him. He relies upon Commissioner v. Plant, 2 Cir., 76 F.2d 8, as well as upon Hillman v. Commissioner, supra, and Richards v. Commissioner, supra, previously discussed. Commissioner v. Plant is clearly distinguishable. In that case the taxpayer as beneficiary of a trust was permitted to use as a summer residence a house owned by the trustees. The expenditures made were for the preservation of the trust res. In the present case Chandler was under a legal obligation to provide and maintain a home for his family suitable to their station in life. The payment by the corporation of the expenses of maintaining the home selected by Chandler as his family residence did in legal effect discharge this obligation. Hill v. Commissioner, 8 Cir., 88 F.2d 941. That the substantial discharge of a legal obligation of the taxpayer represents for tax purposes a distribution to him is now well settled. Helvering v. Fitch, 309 U.S. 149, 60 S.Ct. 427, 84 L.Ed. 665. There was no error in including in Chandler's income the costs of maintaining his home at Brandywine Lodge.

■ Rent and Assessments of Park Avenue Apartment. The trustee paid $6,-190.06 in 1934 and $5,658.48 in 1935 for rent and assessments on the Park Avenue apartment in New York City, occupied by Chandler and his family as a family residence for at least four months of each year. For the reasons already stated we are of the opinion that these payments were properly treated as income to Chandler under the terms of Section 24(a) (1) of the Revenue Act of 1934.

The decision of the Board of Tax Appeals is affirmed.