Cecelia K. Anderson MOREELL, and I. Cyrus Gordon and Edmund Anderson, Executors of the Estate of Harry Anderson, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 62–105.

United States District Court
W. D. Pennsylvania.

Sept. 26, 1963.

Reed, Smith, Shaw & McClay, Pitts-' burgh, Pa. for plaintiffs.

U. S. Atty., for defendant.

GOURLEY, Chief Judge.

This is a suit for the refund of federal income taxes assessed against and collected from the taxpayers for the calendar years 1955 and 1956 in the amounts of $8,677.65 and $6,912.21 respectively.

## QUESTIONS PRESENTED

1. Whether the costs of maintaining a personal residence occupied by the sole income beneficiary, rent free are deductible in determining the net distributable income of a trust, or whether the amounts so expended for maintenance constitute taxable income to said beneficiary.

The answer is "no."

2. Whether the taxpayer may transfer her personal residence to a trust created by another of which taxpayer is a beneficiary as a means of reducing her taxable income.

The answer is "no."

3. Whether the taxpayer, the beneficiary of a trust, realizes income from the trust to the extent of the fair rental value of a residence owned and maintained by the trust and occupied by the beneficiary free of rent.

The answer is "yes."

Robert J. Frank, a very wealthy man, in 1931 created a trust for his wife and among the assets was a mansion house which cost in the vicinity of one-half million dollars. After the trust became effective, and consistent with the provisions thereof, the property became vested in the taxpayer in the instant suit. Subsequently, due to the cost of maintenance, the mansion house was reconveyed to the trust.

Subsequent to reconveyance due to the inability of taxpayer to pay the cost of maintenance and operation, the trust paid said expenses. The payments made in the years 1955 and 1956 are the subject of this proceeding.

The detailed circumstances in support of this generalization will appear more

clearly and succinctly in the Findings of Fact and Conclusions of Law incorporated as part of this Opinion.

## APPLICABLE LAW

Internal Revenue Code of 1954:

"§ 261. General rule for disallowance of deductions

"In computing taxable income no deduction shall in any case be allowed in respect of the items specified in this part.

(26 U.S.C. 1958 ed., § 261.)

"§ 262. Personal, living, and family expenses

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

(26 U.S.C. 1958 ed. § 262.)

"§ 643. Definitions applicable to subparts A, B, C, and D

\*　　\*　　\*　　\*　　\*　　\*

"(b) Income.—For purposes of this subpart and subparts B, C, and D, the term 'income', when not preceded by the words 'taxable', 'distributable net', 'undistributed net', or 'gross', means the amount of income of the estate or trust for the taxable year determined under the terms of the governing instrument and applicable local law. Items of gross income constituting extraordinary dividends or taxable stock dividends which the fiduciary, acting in good faith, determines to be allocable to corpus under the terms of the governing instrument and applicable local law shall not be considered income.

\*　　\*　　\*　　\*　　\*

(26 U.S.C. 1958 ed., § 643.)

"§ 651. Deduction for trusts distributing current income only

"(a) Deduction.—In the case of any trust the terms of which—

"(1) provide that all of its income is required to be distributed currently, and

"(2) do not provide that any amounts are to be paid, permanently set aside, or used for the purposes specified in section 642(c) (relating to deduction for charitable, etc., purposes),

there shall be allowed as a deduction in computing the taxable income of the trust the amount of the income for the taxable year which is required to be distributed currently. This section shall not apply in any taxable year in which the trust distributes amounts other than amounts of income described in paragraph (1).

\*　　\*　　\*　　\*　　\*　　\*

(26 U.S.C. 1958 ed., § 651.)

"§ 652. Inclusion of amounts in gross income of beneficiaries of trusts distributing current income only

"(a) Inclusion.—Subject to subsection (b), the amount of income for the taxable year required to be distributed currently by a trust described in section 651 shall be included in the gross income of the beneficiaries to whom the income is required to be distributed, whether distributed or not. If such amount exceeds the distributable net income, there shall be included in the gross income of each beneficiary an amount which bears the same ratio to distributable net income as the amount of income required to be distributed to such beneficiary bears to the amount of income required to be distributed to all beneficiaries.

"(b) Character of amounts.—The amounts specified in subsection (a) shall have the same character in the hands of the beneficiary as in the hands of the trust. For this purpose, the amounts shall be treated as consisting of the same proportion of each class of items entering into the computation of distributable net income of the trust as the total of each class bears to the total distributable net income of the trust, unless the terms of the trust specifically allo-

cate different classes of income to different beneficiaries. In the application of the preceding sentence, the items of deduction entering into the computation of distributable net income shall be allocated among the items of distributable net income in accordance with regulations prescribed by the Secretary or his delegate.

\* \* \* \* \* \*

(26 U.S.C. 1958 ed., § 652.)

"§ 671. Trust income, deductions, and credits attributable to grantors and others as substantial owners

"Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. \* \* \*

"§ 672. Definitions and rules

"(a) *Adverse party.*—For purposes of this subpart, the term 'adverse party' means any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust. A person having a general power of appointment over the trust property shall be deemed to have a beneficial interest in the trust.

"(b) *Nonadverse party.*—For purposes of this subpart, the term 'nonadverse party' means any person who is not an adverse party.

\* \* \* \* \* \*

(26 U.S.C. 1958 ed., § 672.)

"§ 676. Power to revoke

"(a) *General rule.*—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a non-adverse party, or both.

\* \* \* \* \*

(26 U.S.C. 1958 ed., § 676.)

"§ 677. Income for benefit of grantor

"(a) *General rule.*—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be—

"(1) distributed to the grantor; ·

"(2) held or accumulated for future distribution to the grantor; ·

\* \* \* \* \* \*

(26 U.S.C. 1958 ed., § 677.)"

Treasury Regulations on Income Tax (1954 Code):

"Sec. 1.262–1. Personal, Living and Family Expenses.

\* \* \* \* \* \*

"(b) *Examples of personal, living and family expenses.*—

\* \* \* \* \*

"(3) Expenses of maintaining a household, including amounts paid for rent, water, utilities, domestic service, and the like, are not deductible. A taxpayer who rents a property for residential purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense.

"Treasury Regulations on Income Tax (1954 Code), Sec. 1.262–1 (26 C.F.R., Sec. 1.262–1)

"Sec. 1.643(b)–1. *Definition of 'Income'.*

"For purposes of subparts A through D, of part I, subchapter J, chapter 1 of the Code, the term 'income', when not preceded by the words 'taxable', 'distributable net', 'undistributed net', or 'gross', means the amount of income of an estate of trust for the taxable year determined under the terms of its governing instrument and applicable local law. Trust provisions which depart fundamentally from concepts of local law in the determination of what constitutes income are not recognized for this purpose. For example, if a trust instrument directs that all the trust income shall be paid to A, but defines ordinary dividends and interest as corpus, the trust will not be considered one which under its governing instrument is required to distribute all its income currently for purposes of section 642(b) (relating to the personal exemption) and section 641 (relating to 'simple' trusts). (Treasury Regulations on Income Tax (1954 Code), Sec. 1.643(b)–1 (26 C.F.R., Sec. 1.643(b)–1)"

■ A trustee may not deduct amounts expended in maintaining a personal residence for a beneficiary under the cloak of costs of administration or conservation of the corpus. Estate of Mortimer B. Fuller, 9 T.C. 1069, 1075, affirmed, per curiam, 171 F.2d 704 (3rd Cir., 1948) cert. den., 336 U.S. 961, 69 S.Ct. 892, 93 L.Ed. 1113 (1949); Union Trust Co. v. Commissioner, 54 F.2d 199 (6th Cir., 1931) affirming 18 B.T.A. 1234.

■ Where a taxpayer incurs expenses arising out of living in, and maintenance of, a home to which the taxpayer does not have title, but in connection with which the taxpayer divested itself of title in order to be relieved of maintenance costs, the law is settled that the discharge of a legal obligation incident to maintenance of a home by a third party constitutes income to the taxpayer. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929); Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864 (1940); Chandler v. Commissioner, 119 F.2d 623 (3rd Cir.).

■ Under the provisions of law, it is not necessary that the income be received in cash. Helvering v. Bruun, supra.

■ In determining whether the deductions are proper and if the taxpayer should be relieved from considering the expense of maintenance of the mansion house as income, it is elementary that a deduction is a matter of legislative grace, and any particular deduction can be allowed only when a clear provision for it exists. Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416 (1940).

■ Also, courts may look beyond the legal form to the origin and nature of the expense sought to be deducted. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 594, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).

■ The mere transfer in trust of legal title to property does not necessarily relieve the grantor of the obligations and liabilities of ownership insofar as such obligations and liabilities affect the federal revenues. See Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940).

■ The occupation of the mansion house by the taxpayer as a personal residence, and the payment by the trust estate of the costs and expenses of maintenance constituted a distribution by the trust to the taxpayer of income which should have been included in the tax returns for the years 1955 and 1956.

After a most meticulous review and consideration of the facts, the statutes and case law, it is the considered judgment of the court that the claim of the taxpayer must fail and judgment should be entered in favor of the United States of America and against Cecelia K. Anderson Moreell and I. Cyrus Gordon and Edmund Anderson, Executors of the Estate of Harry K. Anderson.

The court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff, Cecelia K. Frank Anderson Moreell, was the wife of Robert J. Frank. She was a beneficiary and an original trustee of the Robert J. Frank Trust of 1931 (hereinafter referred to as the trust). They were divorced on April 9, 1951. On August 23, 1951, plaintiff Moreell married Harry K. Anderson and they remained married until his death in 1958. The plaintiffs, I. Cyrus Gordon and Edmund Anderson, were named and duly qualified to act as executors of the Estate of Harry K. Anderson by will probated on December 23, 1958, in the State of New York and are presently duly acting as executors.

2. Plaintiff Moreell and Harry K. Anderson filed joint federal income tax returns for the calendar years 1955 and 1956 with the District Director of Internal Revenue, Jacksonville, Florida, within the time required by law. They reported their income on the cash basis. In these returns they reported income received by plaintiff Moreell from the trust in the amount of $25,855.01 and $32,150.81 for the years 1955 and 1956, respectively.

3. The trust filed federal fiduciary income tax returns for the calendar years 1955 and 1956. In both years the trust deducted the entire net distributable income of the trust as distributions to beneficiaries. The amounts of these distributions were $25,855.01 and $32,150.81, respectively, the entire amounts being paid to plaintiff Moreell. In computing the taxable income and the net distributable income of the trust, the trust deducted expenditures made for the care and maintenance of the Woodland Road Property to which the trust had title, but which was used exclusively by plaintiff Moreell and Harry K. Anderson during these years as their personal residence. These deductions were in the amounts of $20,276.95 in 1955 and $13,558.22 in 1956. The fiduciary returns were audited by the Internal Revenue Service and it was determined that the expenses for the care and maintenance of the Woodland Road Property were the personal living expenses of plaintiff Moreell and deductions were thereupon disallowed.

4. The joint returns of plaintiff Moreell and Harry K. Anderson were audited and it was determined that the amounts expended by the trust (and disallowed on the trust's returns) for the care and maintenance of the Woodland Road Property were includable in the gross income of plaintiff Moreell. A deficiency in tax was assessed against plaintiff Moreell and Harry K. Anderson for the years 1955 and 1956, which deficiencies were paid on July 14, 1959. On May 26, 1961, plaintiffs filed claims for refund for the recovery of the deficiencies paid. The complaint herein was timely filed on February 14, 1962.

5. The Robert K. Frank Trust of 1931 was created by deed of trust from Robert K. Frank to the trustees dated December 31, 1931. The beneficiaries of the trust were his wife (plaintiff Moreell) and their children. The instrument provided for the current distribution of trust income, and prohibited the encumbrance of trust property or the anticipation or assignment of the beneficiaries' interests therein. The settlor reserved the right to make additional contributions to the corpus of the trust but made no provisions for contributions by other persons. The instrument conferred extraordinary powers upon plaintiff Moreell. It provided that no distribution of corpus or variance in the share of the trust income received by the beneficiaries could be made without the expressed consent of plaintiff Moreell.

Article II(b) provides for the current distribution of trust income in the following proportions: 50% to plaintiff Moreell and the balance to be distributed among the children. The portions, however, could be altered under Article VI.

Article VI confers the extraordinary powers upon plaintiff Moreell. It provides:

"Anything hereinbefore to the contrary notwithstanding, said Trus-

tees, by majority vote, during the lifetime of Cecelia K. Frank only with her consent, whether or not she be acting as Trustee, shall have the right and power at any time and from time to time; in their own uncontrolled discretion, to make distribution of the principal of this trust, in whole or in part, as well as of any or all undistributed income, to my wife or any of my children, or any of the other beneficiaries mentioned in Items II and III above; to vary or change and fix the share of the income and/or principal of, and the manner of paying the same to, any of the beneficiaries (including my wife) hereinbefore mentioned, in such manner as they shall deem right and proper, or to eliminate entirely any of said beneficiaries from participation in the income and/or principal of the trust estate; and to choose beneficiaries, whether they be individuals (excluding therefrom, however, the Donor) or organization, associations, corporations or bodies maintained for religious, charitable, philanthropic, educational or other public uses and purposes, to participate in the income and/or principal of the trust estate at such time or times, for such term or terms, and in such manner, proportions, percentages or amounts as they shall deem right and proper."

Article I forbids the borrowing of money or encumbrance of trust property "unless the same is necessary to carry out the purposes of or to preserve this trust."

Article VII(a) reserves to the settler the right to make additional contributions to the trust. The instrument does not authorize contributions by other persons.

Article VII(k) contains the spendthrift provisions.

6. During the period 1949 through 1956 none of the trustees of the trust had an interest in the trust adverse to plaintiff Moreell. During part of this period plaintiff Moreell acted as a trustee in violation of the terms of the trust instrument.

During the period from October 9, 1949 through at least July 5, 1950, plaintiff Moreell, her brother, Frank R. S. Kaplan, and her brother-in-law, Dr. Lawrence Wechsler, were the sole trustees of the trust. Kaplan and Wechsler continued to serve as trustees through 1956. Neither had any beneficial interest in the trust to be affected by the exercise or non-exercise of the powers which they possessed.

The Fidelity Trust Company (now the Pittsburgh National Bank) was appointed trustee at some time between July 5, 1950 and January 8, 1951, and continued to act as trustee and financial agent through 1956. The Fidelity Trust Company had no beneficial interest in the trust to be affected by the exercise or non-exercise of the powers which it possessed.

Plaintiff Moreell continued to act as a trustee until at least January 1, 1952.

The trust instrument specifically forbade plaintiff Moreell from acting as a trustee upon her failure to live with Robert J. Frank as his wife.

Robert J. Frank and plaintiff Moreell ceased living together as husband and wife on November 15, 1947 and were divorced on April 9, 1951.

7. Plaintiff Moreell was the grantor of the Woodland Road Property to the trust. Although bare legal title was in the trust, plaintiff Moreell continued to treat it as if it were her own property. The continued ownership of the property served no trust purpose, but was solely for the benefit and convenience of plaintiff Moreell. The property produced no income for the trust, but rather constituted a constant drain on trust assets.

The Woodland Road Property was not a part of the original trust corpus, and the trust instrument made no provisions for the ownership of such property by the trust. Plaintiff Moreell had originally owned the land and it had been the subject of a previous declaration of

trust by her. The residence was constructed with assets of the trust.

On October 24, 1949, the trustees (plaintiff Moreell, Frank R. S. Kaplan, and Dr. Lawrence Wechsler) unanimously resolved to transfer the Woodland Road Property to plaintiff Moreell in fee simple and free of the trust pursuant to Article VI of the trust instrument. The property was unencumbered. Its cost upon the completion of the residence in 1942 was $445,360.66.

On July 5, 1950, the trustees (plaintiff Moreell, Frank R. S. Kaplan, and Dr. Lawrence Wechsler) agreed to pay from the principal of the trust, the bills incurred by plaintiff Moreell for the care, maintenance and upkeep of the property. These payments were made continuously up to the years in question.

Between October 24, 1949 and April 29, 1952 (the period in which she had title to the property), plaintiff Moreell mortgaged the property for an amount not less than $90,000.

On April 29, 1952, plaintiff Moreell made a gift of the property to the trust giving as her reason her desire to prevent her husband, Harry K. Anderson, from acquiring any interest in the property. The trustees accepted the property subject to the $90,000 mortgage, and agreed to discharge the mortgage by paying off the principal from trust corpus and interest from trust income.

Plaintiff Moreell did not surrender possession of the Woodland Road Property after the deed of gift, but continued to use it exclusively and without limitation as her personal residence and continues to reside therein at the present time. During the years 1955 and 1956, as in the other years, plaintiff Moreell paid no rent. Her continued residence in the property until her death is contemplated. Her use and occupancy of the property is not restricted by any lease or other written agreement.

The property has not produced any income for the trust. The trustees did not regard it as income producing property.

During the period 1952 to 1962 at least $93,000 of the trust corpus was expended by the trustees in partial retirement of the mortgage placed upon the property by plaintiff Moreell and for other improvements to the property. (This is in addition to the $33,835.17 of trust income expended during the years 1955 through 1956 in issue here.)

In its tax returns for 1958 and 1959 the trust capitalized and took a depreciation deduction for certain improvements. Upon audit these deductions were disallowed.

8. Plaintiff Moreell, acting with the trustees, all nonadverse parties (Paragraph 6 above), could have had the Woodland Road Property reconveyed to her at any time, just as she had procured the distribution of over $690,000 of trust corpus to her during the period 1949 through 1962. The trustees did not exercise independent judgment in determining whether distributions should be made. In administering the trust property they acted more as agents of plaintiff Moreell than as trustees.

Distributions of capital were made to plaintiff Moreell upon her request. When a request was made (at least once a year) a meeting was held. While there may have been discussions with respect to the amount of the distribution, a distribution was always made.

The other circumstance under which distributions of corpus were made was when plaintiff Moreell's personal bills had accumulated or she had overdrawn her bank account. In this situation, the trustees would meet specially and declare a corpus distribution to her so that she could meet these obligations.

Investment policy was determined consistent with her personal interests.

During the period 1949 through 1961 the trustees distributed to plaintiff Moreell trust corpus in the amount of at least $690,000.

9. During the years 1955 and 1956, plaintiff Moreell personally incurred expenses for the maintenance and care of

the Woodland Road Property in the amounts of $20,276.95 and $13,558.22, respectively. The trustees did not determine which expenditures would be made or in what amounts. The bills were turned over to trustees and were always paid. These expenses were the personal living expenses of plaintiff Moreell.

During the year 1955 the trustees expended $20,276.95 of trust income for the care and maintenance of the Woodland Road Property. These were the ordinary noncapital expenditures incident to the maintenance and occupancy of the property. The nature and amount of these expenditures were:

| | | |
|---|---|---|
| TAXES | City and School Taxes | $ 3,642.82 |
| | Allegheny County Taxes | 1,059.52 |
| INTEREST | Interest on Mortgage | 1,333.13 |
| INSURANCE | Louis Wechsler Agency | 220.11 |
| UTILITIES | Duquesne Light Co. | 1,148.17 |
| | Peoples Natural Gas Co. | 1,271.96 |
| | David A. Smith, Treas., Pgh. Water | 572.94 |
| WATER REPAIRS | Weldon & Kelly Co. | 928.32 |
| AIRCONDITION-ING SERVICE | Paul Heagy | 583.31 |
| SANITATION SERVICE | Remo Sanitation Co. | 88.00 |
| ELEVATOR SERVICE | Otis Elevator Company | 278.25 |
| WINDOW & SHADE SERVICE | Mamaux Awning & Tent Mfg. Co. | 84.84 |
| | Hamilton Shade & Drapery Co. | 58.67 |
| | Victor Decorating Co. | 2,428.50 |
| GARDEN & LAND-SCAPING SERVICE | Consentino Brothers | 1,640.50 |
| | Davey Tree Expert Co. | 835.78 |
| | Bushnell Machinery Co. | 100.49 |
| | Louis Hahn & Son | 91.08 |
| GENERAL REPAIRS | Paul Heagy | 142.75 |
| | Louis Hahn & Son | 311.03 |
| | Better Built Supply, Inc. | 144.19 |
| | Bindley Fence & Equipment | 108.00 |
| | Weston Sales & Service | 67.89 |
| | Automatic Elec. Sales | 63.08 |
| | Gateway Plating & Mfg. Co. | 22.00 |
| | William L. Berndt | 511.13 |
| | Atlas Theatre Supply Co. | 34.34 |
| | Raphael Elec. Co. | 111.69 |
| | Sauer, Inc. | 49.28 |
| | Weldon & Kelly Co. | 361.01 |
| MAINTENANCE & NIGHT WATCHMAN | Woodland Road Assn. | 188.41 |
| | Salary | 1,736.25 |
| | Employee's Soc. Sec. taxes | 30.33 |
| | Pa. Employment Comp. Ins. | 29.18 |
| TOTAL | | $20,276.95 |

During the year 1956, the trustees expended $13,558.22 in trust income for the care and maintenance of the Woodland Road Property. These were ordinary noncapital expenditures incident to the maintenance and occupancy of the property. The nature and amount of these expenditures were:

| | | |
|---|---|---|
| TAXES | City & School Taxes | $ 3,956.54 |
| | Allegheny County Taxes | 1,059.52 |
| INTEREST | Interest on Mortgage | 1,125.00 |
| INSURANCE | Louis Wechsler Agency | 217.11 |
| UTILITIES | Duquesne Light Co. | 1,177.98 |
| | Peoples Natural Gas Co. | 1,619.96 |
| | David A. Smith, Treas., Pgh. Water | 656.24 |
| SANITATION SERVICE | Remo Sanitation Co. | 96.00 |
| ELEVATOR SERVICE | Otis Elevator Company | 317.94 |
| AIRCONDITIONING SERVICE | Paul Heagy | 126.10 |
| GARDEN & LANDSCAPING SERVICE | Consentino Brothers | 385.20 |
| | Davey Tree Expert Co. | 504.05 |
| | Louis Hahn & Son | 350.63 |
| GENERAL REPAIRS | Consentino Brothers | 15.00 |
| | Victor Decorating Co. | 178.50 |
| | Automatic Elec. Sales | 86.84 |
| | Weldon & Kelly Co. | 744.29 |
| | Raphael Elec. Co. | 63.97 |
| | Hamilton Shade & Drapery | 31.40 |
| | Miller Meyer | 86.85 |
| | Johnson Service Co. | 26.09 |
| | J. J. Schano Co. | 265.44 |
| | General Elec. Appliance | 264.16 |
| MAINTENANCE & NIGHT WATCHMAN | Woodland Road Association | 203.41 |
| | TOTAL | $13,558.22 |

These expenses were incurred by plaintiff Moreell in her own name without prior consultation with the trustees as to the necessity therefor. She received the bills and turned them over to the trustees for payment.

The trustees paid the bills relating to the property without question. In the case of an exorbitant bill, the corporate trustee checked with plaintiff Moreell first to determine whether the bill was correct or the work had actually been performed.

Bills submitted by plaintiff Moreell which did not relate to the property were paid in the manner described in Paragraph 8 above.

10. During the years 1955 and 1956, all of the income of the trust was distributed to plaintiff Moreell.

In both years the entire net distributable income of the trust, as computed by the trustees on their fiduciary income tax return, was distributed to plaintiff Moreell and was reported on the joint income tax returns of plaintiff Moreell and Harry K. Anderson. (See paragraphs 2 and 3 above.)

The trust, on its fiduciary returns, claimed an exemption of $300 which is the exemption prescribed for trusts required to distribute all income currently.

The trust instrument directs the payment to the beneficiaries of all the trust income, with plaintiff Moreell to receive 50% of the income. The trustees, with the consent of plaintiff Moreell, could carry the shares of income received.

In 1955 and 1956, plaintiff Moreell was the only beneficiary receiving trust income. The trustees, with the consent of plaintiff Moreell, had, at some date previous to 1955, determined, pursuant to Article VI of the trust instrument, to alter the shares of trust income received by the beneficiaries so that plaintiff Moreell received all of the income and the other beneficiaries received none.

The trust instrument does not provide for the accumulation of income (except in the case of minor children which is no longer relevant).

The trustees never made a determination to accumulate income. In any event, income could not be accumulated without the consent of plaintiff Moreell.

11. The fair rental value of the Woodland Road Property during the years 1955 and 1956 was $2,000 per month. This rental value relates to the years 1955 and 1956 only, and shall not be considered of any substantive or probative value in any other year.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under 28 U.S.C. § 1346(a) (1).

2. Personal living expenses are not deductible from gross income in determining a taxpayer's taxable income. Internal Revenue Code of 1954, Section 262 (26 U.S.C. 1958 ed., § 262).

3. All expenses attributable to the Woodland Road Property are the personal expenses of plaintiff Moreell and not deductible by her or the trust.

4. Plaintiff Moreell is the owner of the Woodland Road Property under the provisions of Sections 671 and 676 of the Internal Revenue Code of 1954 (26 U.S.C. 1958 ed., §§ 671, 676). The amount of the expenses paid by the trust are includable in the gross income of plaintiff Moreell.

5. The payment by the trust of the personal living expenses incurred by plaintiff Moreell constituted a discharge of her legal obligations. The amount expended by a third party in the discharge of a taxpayer's legal obligation is gross income to the taxpayer.

6. The disallowance of the expense deductions to the trust increased the net distributable income of the trust in the amount of those expenses. The additional net distributable income must be included in the gross income of plaintiff Moreell. Internal Revenue Code of 1954, Section 652 (26 U.S.C. 1958 ed., § 652).

7. The payment of plaintiff Moreell's personal living expenses out of the trust income is equivalent to a distribution of that income to her.

8. If the expenditures made by the trust for the maintenance of the property are not includable in the gross income of plaintiff Moreell, then the fair rental value of the property is income to her.

## ORDER

And now, this 26th day of September, 1963, it is ordered and directed that judgment will be, and hereby is, entered in favor of the United States of America and against Cecelia K. Anderson Moreell and I. Cyrus Gordon and Edmund Anderson, Executors of the Estate of Harry K. Anderson, plaintiffs, together with costs.