J. Simpson Dean and Paulina duPont Dean, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket No. 75523. Filed March 30, 1961.

*Laurence Graves, Esq.*, for the petitioners.
*Edward L. Newberger, Esq.*, for the respondent.

### OPINION.

Raum, *Judge:* The Commissioner determined deficiencies in income tax against petitioners for 1955 and 1956 in the amounts of $13,875.61 and $16,383.86, respectively. Petitioners are husband and wife; they filed joint returns for 1955 and 1956 with the director of internal revenue at Wilmington, Delaware. To the extent that the deficiencies still remain in controversy they raise the question whether petitioners were entitled to deduct as interest the amounts of $9,243.38 in 1955 and $26,912.02 in 1956 representing interest on loans on life insurance policies which had accrued and which was paid by them after they had made irrevocable assignments of such policies to their children. An amended answer filed by the Commissioner claims increases in the deficiencies already determined by adding thereto the amounts of $105,181.50 and $119,796.78 for 1955 and 1956, respectively. Such increases raise a single issue, unrelated to the original deficiencies, namely, whether petitioners realized taxable income to the extent of the alleged economic benefit derived from the interest-free use of funds which they had borrowed from a family corporation controlled by them. The facts have been stipulated.

### *Issue 1. Interest Deduction.*

The stipulation of facts, as it relates to the original issue presently in controversy, is in its entirety as follows:

2. In 1937 petitioner J. Simpson Dean created an irrevocable trust to which he transferred life insurance policies theretofore obtained by him on the life of petitioner Paulina duPont Dean, having an aggregate face value of $2,145,017. In 1937 petitioner Paulina duPont Dean created an irrevocable trust to which

she transferred life insurance policies theretofore obtained by her on the life of petitioner J. Simpson Dean having an aggregate face value of $1,125,391. Each of these trusts was for the benefit of the petitioners' children. The trustee of each of these trusts had the power to sell and assign to any person or persons the policies of insurance held thereunder, or any of them, for not less than the cash surrender value.

3. Early in 1955 petitioner J. Simpson Dean purchased from the trustee certain of the life insurance policies transferred by him to the trust created by him in 1937 at their cash surrender value on the date of the purchase, which was considered to be the fair market value of the policies so purchased. Immediately after this purchase said petitioner applied for and obtained loans from the respective insurance companies on the policies so purchased to the extent of their cash surrender values. The money so obtained was applied by said petitioner to his personal use. Shortly after securing such loans said petitioner assigned and transferred ownership of said policies to the children of himself and petitioner Paulina duPont Dean by executing forms required by the respective insurance companies.

4. Early in 1955 petitioner Paulina duPont Dean purchased from the trustee certain of the life insurance policies transferred by her to the trust created by her in 1937 at their cash surrender value on the date of the purchase, which was considered to be the fair market value of the policies so purchased. Immediately after this purchase said petitioner applied for and obtained loans from the respective insurance companies on the policies so purchased to the extent of their respective cash surrender values. The money so obtained was applied by said petitioner to her personal use. Shortly after securing such loans said petitioner assigned and transferred ownership of said policies to the children of herself and petitioner J. Simpson Dean by executing forms required by the respective insurance companies.

5. In connection with the assignments to the beneficiaries, the children of the petitioners, each of the companies used their own special forms for assignment and change of ownership of the policies. Examples of the forms used by the insurance companies for the above purpose, are Exhibit 1-A, the form used by the Bankers Life Insurance Company, and Exhibit 2-B, the form used by the United States Life Insurance Company.

6. Approximately one-half of the notices for payment of the interest due and the amounts of interest due in the years 1955 and 1956 were addressed to petitioners. The other one-half were addressed to the assignee children of the petitioners.

All the interest regardless of to whom the bills were addressed was paid by the petitioners and deductions were claimed in their joint income tax returns filed by them for the years 1955 and 1956, in the following amounts:

| | |
|---|---|
| 1955 | $14,102.41 |
| 1956 | 26,912.02 |

7. Of the $14,102.41 claimed above as interest by the petitioners on their 1955 income tax return, $4,859.03 is attributable to interest accrued and/or paid by the petitioners prior to the assignment of the insurance policies. This latter amount is allowable as a deduction. The balance of the interest claimed, $9,243.38, represents interest paid and accrued after the assignments, and is the amount in controversy for 1955. All the interest claimed in 1956 has been disallowed, and is the amount in controversy for that year.

Petitioners seek to deduct the amounts in controversy as "interest paid * * * on indebtedness." Sec. 163(a), I.R.C. 1954. The Com-

missioner defends his disallowance of the deduction by relying upon the familiar rule that "The statutory provision allowing deduction for interest on indebtedness means interest on an obligation of the taxpayer claiming it; payments made on obligations of others do not meet the statutory requirement." *Chester A. Sheppard*, 37 B.T.A. 279, 281–282. Cf. *Helen B. Sulzberger*, 33 B.T.A. 1093; *William H. Simon*, 36 B.T.A. 184; *Agnes I. Fox*, 43 B.T.A. 895. An analysis of the insurance loans here involved persuades us that the Commissioner correctly applied the foregoing well-established rule to the facts of this case.

Insurance policy loans are unique because the borrower assumes no personal liability to repay the principal or to pay interest on the amount borrowed. Such loans are based on the reserve value of the insurance policies involved. If either the principal or the interest is not repaid, it is merely deducted from the reserve value of the policy. Since the insurance company "never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability." *Orleans Parish* v. *N.Y. Life Ins. Co.*, 216 U.S. 517, 522.

We have held that interest on an insurance policy loan may be deducted so long as it is actually paid or accrued by the policyholder. If such interest is not paid but is allowed to be added to the principal amount of the loan, the amount of the interest is not deductible. *Nina Cornelia Prime*, 39 B.T.A. 487; *Albert J. Alsberg*, 42 B.T.A. 61.

Here, the respondent has stipulated that the interest paid or accrued by the petitioners on the insurance policy loans prior to the assignment of the insurance policies to their children is a proper deduction. True, the petitioners were not personally liable to pay this interest. But by making the loans involved, the petitioners had become obligated in a sense to pay interest thereon. Although the petitioners could never be sued for this interest, the "obligation" was sufficient to qualify it as deductible interest for income tax purposes because such interest was in fact and in law a charge against their rights in the policies. The essential question for purposes of this case is whether the "obligation" to pay interest survived the assignment of the policies involved to others. We think it did not. It follows that after the assignment, interest paid by the petitioners was paid for the benefit of the assignees and is not deductible by petitioners. Cf. *Helen B. Sulzberger, supra.*

In *Agnes I. Fox*, 43 B.T.A. 895, it was held that the assignee of an insurance policy subject to a loan made prior to the assignment could deduct interest on that loan paid or accrued after the assignment but not interest accrued and unpaid prior to the assignment. We there noted that it was the assignor who had borrowed on the policies and "it was he who had the obligation to pay interest and the

obligation continued until the date of assignment to petitioner. Proration must be made as of that date." 43 B.T.A. 895, 899. Although that case dealt with the reverse situation from the instant case (i.e., the deduction of interest by the assignee rather than the assignor), it seems obvious that the same principles must apply to both. The assignor has a right to deduct the interest paid or accrued prior to the date of the assignment of the underlying insurance policy; the assignee has such right after. Here, under the rule of the *Fox* case, it was petitioners' children, the assignees, who could deduct the interest on the insurance policy loans after the assignment, assuming that they paid such interest. When the petitioners in 1955 and 1956 continued to pay this interest after the assignment date, they in effect made a gift of such payments to their children, for they extinguished a charge against an asset held by their children. Such a gift cannot qualify for the statutory interest deduction.

Petitioners, in order to avoid this result, argue that their obligation to pay interest on the borrowed money must have survived the assignment of the insurance policies because, although the assignees received policies subject to a loan, they did not assume the indebtedness nor the interest thereon by accepting the assignment. But petitioners' conclusion is not required by their premise. Granted that petitioners' children did not "assume" the obligation to pay the interest on the insurance loans by accepting the policies, this does not necessarily mean that petitioners' obligation continued. Since petitioners' obligation was never a personal liability and since the insurance companies always looked to the policies themselves for repayment, it is not inconsistent to conclude that petitioners' particular obligations in regard to the repayment of the loans and the interest thereon were extinguished upon irrevocably parting with the beneficial ownership of the policies. Petitioners' children received the policies subject to the loans; if they wanted to protect the value of these policies, they could pay the interest on the loans as it came due and under the *Fox* case they would be permitted to deduct such payments. Although they were in no way required to pay this interest, their ownership interest in the underlying policies which were subject to the indebtedness was sufficient to qualify any interest paid for the statutory deduction. The specific holding in the *Fox* case, that the assignor's "obligation continued *until the date of the assignment*" (emphasis supplied), defeats the petitioners' view that either the assignors or the assignees may pay and deduct the interest after the date of assignment.

Finally, petitioners argue that even if they were under no obligation to pay the interest, they are nevertheless entitled to the contested

deductions on a principle of equitable liability since they "benefited" [1] from the loans involved, citing *United States Fidelity & Guaranty Co.*, 40 B.T.A. 1010, and *Howard Gould*, 14 T.C. 744. Those cases recognized a limited and narrow exception to the general rule that interest to be deductible must be paid on an obligation of the taxpayer. They turn upon highly unusual factual situations, and we do not think it necessary to enter upon any extended discussion about the strong equitable positions of the taxpayers in those cases which were thought to justify treating them as in substance the obligors with respect to the payments in question. The position of the present petitioners, who had irrevocably disposed of every interest in the policies and thereby retained no continuing interest of any kind therein, is radically different. We hold that they are subject to the general rule and are not entitled to the exceptional treatment accorded the taxpayers in the two foregoing cases by reason of the unique factual situations therein.

*Issue 2. Income From Interest-Free Loans.*

The Commissioner's amended answer charged petitioners with income equal to interest at the alleged legal rate in Delaware (6 percent) with respect to loans which they had obtained upon non-interest-bearing notes from their controlled corporation, Nemours Corporation, and which were outstanding during 1955 and 1956. The theory of the amended answer was that the petitioners realized income to the extent of the economic benefit derived from the free use of borrowed funds from Nemours, and that such economic benefit was equal to interest at the legal rate in Delaware, alleged to be 6 percent per annum. However, the Commissioner's brief has reduced the amount of his additional claim so that the income thus attributed to petitioners is measured, not by the legal rate of interest, but by the prime rate, since it is stipulated that petitioners could have borrowed the funds at the prime rate. As thus reduced, the additional income

---

[1] Petitioners' contention in effect is that they should be treated equitably as the obligors since the proceeds of the loan were used for their benefit. Apart from the conclusion which petitioners thus seek to have us draw, we are by no means satisfied on this record that the factual assumption as to benefit may be taken as correct. Although the stipulation of facts does indeed state that the "money [proceeds of loan] so obtained was applied by said petitioner to his [or her] personal use," other portions of the stipulation indicate that such was true only in a highly technical sense and that the net effect of the transaction as a whole was that there was no benefit whatever to the petitioners. For, it must be remembered that the policies in question were owned by irrevocable trusts created in 1937, that petitioners in 1955 purchased these policies from the trusts at their cash surrender value, and that they immediately thereafter obtained the loans in question to the extent of the cash surrender value of the policies. Thus, the loan proceeds merely replaced in petitioners' hands, almost simultaneously, the amounts which they had expended to buy the policies from the trusts. In substance, it was a wash transaction, and it is misleading to state that the loan proceeds were applied for petitioners' benefit without at the same time noting that such proceeds merely replaced other funds of petitioners that presumably would similarly have been available for petitioners' personal use.

which the Commissioner seeks to charge to petitioners is $65,648.79 for 1955 and $97,931.71 for 1956. The facts in relation to this issue have been stipulated as follows:

9. Prior to December 17, 1954 the entire issued and outstanding capital stock of Nemours Corporation, hereinafter referred to as Nemours, organized under the laws of the State of Delaware with principal office in Wilmington, Delaware, consisting of 36,172 shares of no par common, was owned by the petitioners, as follows:

| | |
|---|---|
| J. Simpson Dean | 7,249 shares |
| Paulina duPont Dean | 28,923 shares |

10. On December 17, 1954 each of the petitioners made a gift of 2,000 shares of the stock of Nemours to the above-mentioned trusts created by them in 1937 for the benefit of their children. In the years 1955 and 1956 the petitioners owned 32,172 shares of no par common of Nemours.

11. For the taxable year 1955 Nemours was a personal holding company under section 542 of the Internal Revenue Code of 1954 and filed its Federal income tax returns as such.

12. For the taxable year 1956 Nemours filed its Federal income tax return as a regular business corporation. By notice of deficiency dated March 2, 1960, respondent determined that Nemours was a personal holding company for the year 1956. An appeal from such determination was taken by Nemours and the matter is now pending before this Court in Docket No. 86863, entitled Nemours Corporation v. Commissioner of Internal Revenue.

13. Petitioner J. Simpson Dean owed Nemours on non-interest bearing notes the following amounts:

| Period | Amount |
|---|---|
| January 1, 1955 to January 10, 1955 | $302,185.73 |
| January 11, 1955 to December 31, 1955 | 223,861.56 |
| January 1, 1956 to December 31, 1956 | 357,293.41 |

14. Petitioner Paulina duPont Dean owed Nemours on non-interest bearing notes the following amounts:

| Period | Amount |
|---|---|
| January 1, 1955 to December 31, 1955 | $1,832,764.71 |
| January 1, 1956 to December 31, 1956 | 2,205,804.66 |

15. The following are the prime rates of interest and the dates on which changes were made in such rates at which the petitioners could have borrowed money during the years 1955 and 1956:

| | |
|---|---|
| January 1, 1955 | 3% |
| August 15, 1955 | 3¼% |
| October 20, 1955 | 3½% |
| April 20, 1956 | 3¾% |
| September 1, 1956 | 4% |
| December 31, 1956 | 4% |

16. Interest computed at the prime rates shown in the preceding paragraph on the non-interest bearing notes of the petitioners for the taxable years 1955 and 1956 would be as follows:

| Year 1955: | Amount |
|---|---|
| J. Simpson Dean | $7,203.98 |
| Paulina duPont Dean | 58,444.81 |
| Total | $65,648.79 |

| Year 1956: | Amount |
|---|---|
| J. Simpson Dean | $13, 651. 59 |
| Paulina duPont Dean | 84, 280. 12 |
| Total | $97, 931. 71 |

[Paragraph 17 of the stipulation, objected to by respondent as to relevancy,[2] states that if petitioners had paid interest to Nemours, the corporation would have made dividend distributions to petitioners equal to the amount of such interest, and further sets forth the effect, taxwise and otherwise, upon petitioners, Nemours, and the trusts, based upon that hypothesis as well as certain other assumptions.]

The theory of the Commissioner's amended answer, as modified in his brief, undoubtedly had its origin in a statement by this Court in a Memorandum Opinion involving certain gift taxes of these taxpayers, *Paulina duPont Dean*, T.C. Memo. 1960–54, on appeal (C.A. 3), where it was said:

Viewed realistically, the lending of over two million dollars to petitioners without interest might be looked upon as a means of passing on earnings (certainly potential earnings) of Nemours in lieu of dividends, to the extent of a reasonable interest on such loans. * * *

The amended answer herein was filed within several months after the foregoing Memorandum Opinion had been promulgated. The statement quoted above was mere dictum and we have not been directed to any case holding or even suggesting that an interest-free loan may result in the realization of taxable income by the debtor, or to any administrative ruling or regulation taking that position. Although the question may not be completely free from doubt we think that no taxable income is realized in such circumstances.

In support of its present position, the Government relies primarily upon a series of cases holding that rent-free use of corporate property by a stockholder or officer may result in the realization of income. *Charles A. Frueauff*, 30 B.T.A. 449 (rent-free use of corporation's apartment); *Reynard Corporation*, 30 B.T.A. 451 (rent-free use of corporation's house); *Percy M. Chandler*, 41 B.T.A. 165, affirmed 119 F. 2d 623 (C.A. 3) (rent-free use of corporation's apartment and lodge); *Paulina duPont Dean*, 9 T.C. 256 (rent-free use of corporation's house); *Dean* v. *Commissioner*, 187 F. 2d 1019 (C.A. 3), affirming a Memorandum Opinion of this Court (rent-free use of corporation's house); *Rodgers Dairy Co.*, 14 T.C. 66 (personal use of corporation's automobile). Cf. *Louis Greenspon*, 23 T.C. 138, affirmed on this point but reversed on other grounds 229 F. 2d 947 (C.A. 8) (farm expenses paid by corporation); *Alex Silverman*, 28 T.C. 1061, affirmed 253 F. 2d 849 (C.A. 8) (wife's travel expenses paid by corporation); *Chester Distributing Co.* v. *Commissioner*, 184

---

[2] We find it unnecessary to rule upon that objection, since we reach the result herein without reliance upon paragraph 17.

F. 2d 514 (C.A. 3), affirming per curiam a Memorandum Opinion of this Court (personal entertainment expenses paid by corporation). These cases bear a superficial resemblance to the present case, but reflection convinces us that they are not in point. In each of them a benefit was conferred upon the stockholder or officer in circumstances such that had the stockholder or officer undertaken to procure the same benefit by an expenditure of money such expenditure would not have been deductible by him. Here, on the other hand, had petitioners borrowed the funds in question on interest-bearing notes, their payment of interest would have been fully deductible by them under section 163, I.R.C. 1954. Not only would they not be charged with the additional income in controversy herein, but they would have a deduction equal to that very amount. We think this circumstance differentiates the various cases relied upon by the Commissioner, and perhaps explains why he has apparently never taken this position in any prior case.

We have heretofore given full force to interest-free loans for tax purposes, holding that they result in no interest deduction for the borrower, *A. Backus, Jr. & Sons*, 6 B.T.A. 590; *Rainbow Gasoline Corporation*, 31 B.T.A. 1050; *Howell Turpentine Co.*, 6 T.C. 364, reversed on another issue 162 F. 2d 316 (C.A. 5); *D. Loveman & Son Export Corporation*, 34 T.C. 776, nor interest income to the lender, *Combs Lumber Co.*, 41 B.T.A. 339; *Society Brand Clothes, Inc.*, 18 T.C. 304; *Brandtjen & Kluge, Inc.*, 34 T.C. 416. We think it to be equally true that an interest-free loan results in no taxable gain to the borrower,[3] and we hold that the Commissioner is not entitled to any increased deficiency based upon this issue.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

FISHER, *J.*, concurs in the result.

---

OPPER, *J.*, concurring: The necessity is not apparent to me of deciding more on the second issue than that there can be no deficiency. If petitioners were in receipt of some kind of gross income, possibly comparable to that dealt with in such cases as *Charles A. Frueauff*, 30 B.T.A. 449 (1934), the corresponding interest deduction would perhaps exactly offset and nullify it. But because that would mean that there is no deficiency, it would not necessarily follow that there was

---

[3] As recently as 1955, this was also the view of the Commissioner. In Rev. Rul. 55–713, 1955–2 C.B. 23, in sanctioning the so-called split-dollar insurance scheme, it is said at page 24: "In the instant case, the substance of the insurance arrangement between the parties is in all essential respects the same as if Y corporation makes annual loans without interest, of a sum of money equal to the annual increases in the cash surrender value of the policies of insurance taken out on the life of B. The mere making available of money does not result in realized income to the payee or a deduction to the payor."

no gross income, as the present opinion, in my view, gratuitously holds. Certainly the statement that "an interest-free loan results in no taxable gain to the borrower" is much too broad a generalization to make here.

Suppose, for example, that in such a case as *Charles A. Frueauff*, *supra*, the property made available without charge to the shareholder-officer was rented by him to another, instead of being occupied for personal use. Would the fact that he could presumably deduct as a business or nonbusiness expense the hypothetical rental value theoretically paid by him to the corporation, section 212, I.R.C. 1954, and thereby completely offset any gross income, lead us to conclude, as here, contrary to that whole line of cases, that there could be no gross income in the first place?

Or suppose the facts showed that the indebtedness was "incurred * * * to purchase or carry obligations * * * the interest on which is wholly exempt from * * * taxes." Sec. 265(2), I.R.C. 1954.

This being apparently a case of first impression, the present result seems peculiarly unfortunate in deciding a point that need not be passed on. To make matters worse, the burden here is on respondent, since the issue was first raised by his answer;[1] and thus in this leading case all factual conclusions and inferences must be favorable to petitioners. Cf., e.g., *Spheeris* v. *Commissioner*, 284 F. 2d 928 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court. Disposition of the issue as one of generally applicable law is hence doubly unnecessary.

TIETJENS, WITHEY, and DRENNEN, *JJ.*, agree with this concurring opinion.

---

BRUCE, *J.*, dissenting: I respectfully dissent from the opinion of the majority with respect to the second issue. In my opinion the present case is not distinguishable in principle from such cases as *Paulina duPont Dean*, 9 T.C. 256; *Chandler* v. *Commissioner*, 119 F. 2d 623 (C.A. 3), affirming 41 B.T.A. 165, and other cases cited by the majority, wherein it was held that the rent-free use of corporate property by a stockholder or officer resulted in the realization of income. "Interest" in the sense that it represents compensation paid for the use, forbearance, or detention of money, may be likened to "rent" which is paid for the use of property.

I agree with Judge Opper in his concurring opinion that "the statement that 'an interest-free loan results in no taxable gain to the borrower' is much too broad a generalization to make here." I do not wish to infer that the interest-free loan of money should be construed as resulting in taxable income to the borrower in every instance.

---

[1] See, e.g., *Rainbow Gasoline Corporation*, 31 B.T.A. 1050 (1935), decided partly for petitioner and partly for respondent entirely on the question of burden of proof.

1092

However, it is difficult to believe that the interest-free loan of in excess of $2 million ($2,563,098.07 throughout 1956) by a personal holding company to its majority stockholders (its only stockholders prior to December 17, 1954) did not result in any economic benefit to the borrower.

In my opinion, the statement that "had petitioners borrowed the funds in question on interest-bearing notes, their payment of interest would have been fully deductible by them under section 163, I.R.C. 1954," is likewise too broad a generalization to make here.

Section 163(a) states the "General Rule" to be that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." Section 265(2) provides, however, that—

No deduction shall be allowed for—

\* \* \* \* \* \* \*

(2) INTEREST.—Interest on indebtedness incurred or continued to purchase or carry obligations \* \* \* the interest on which is wholly exempt from the taxes imposed by this subtitle.

Section 265(2) is specifically included in the cross references contained in subsection (c) of section 163 and is therefore clearly intended as an exception to, or limitation upon, section 163(a). For obligations, the interest on which is wholly exempt from taxes, see section 103 of the Internal Revenue Code of 1954.

It is recognized that the burden with respect to the issue here presented by his amended answer is upon the respondent. This burden, however, was, in my opinion, discharged by the stipulated facts presented. It was incumbent upon the petitioners, if such were the facts, to plead and establish that had they been required to pay interest on the loans in question they would have been entitled to deduct such interest from their gross income. They have done neither. It is well established that deductions are matters of legislative grace and must be clearly established.

On the record presented herein, I do not agree that "had petitioners borrowed the funds in question on interest-bearing notes, their payment of interest would have been fully deductible by them under section 163," and that the inclusion in the gross income of the petitioners of an amount representing a reasonable rate of interest on the loans in question would therefore result in no deficiency.