JOSEPH AND EVELYN CREEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JONNIE PARKINSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9245–77, 9246–77.     Filed September 25, 1979.

*Paul M. Newton* and *Ernest L. Shelton III,* for the petitioners.
*Joseph R. Goeke,* for the respondent.

STERRETT, *Judge:* In a notice of deficiency dated June 8, 1977, respondent determined deficiencies in income taxes paid by petitioners Joseph and Evelyn Creel, docket No. 9245–77, for their taxable years ended December 31, 1973 and 1974, in the amounts of $4,769.45 and $6,404.17, respectively. Respondent determined deficiencies in income taxes paid by petitioner Jonnie Parkinson, docket No. 9246–77, for her taxable years ended December 31, 1973 and 1974, in the respective amounts of $3,304.22 and $3,106.61, by a notice of deficiency also dated June 8, 1977. The parties' joint motion to consolidate these cases for trial, briefing, and opinion was granted by this Court on October 30, 1978. After concessions, the only issue remaining for our decision is whether or not petitioners received income by virtue of having been the recipients of various interest-free loans from their corporations during the taxable years in issue. If we hold that petitioners did have such income, then we must determine whether or not petitioners are entitled to offsetting section 163 deductions, and if so, the amount thereof.

### FINDINGS OF FACT

All the facts were stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Joseph and Evelyn Creel, husband and wife, petitioners in docket No. 9245–77, filed timely joint Federal income tax returns, on a cash basis, for their taxable years ended December 31, 1973 and 1974, with the Internal Revenue Service at Chamblee, Ga. At the time their petition herein was filed, petitioners Creel resided in Biloxi, Miss. As petitioner Evelyn Creel is a party hereto solely by virtue of having filed jointly with her husband, petitioners in docket No. 9245–77 shall be referred to as Creel.

Jonnie Parkinson (Parkinson), petitioner in docket No. 9246–77, filed timely Federal income tax returns for her taxable years ended December 31, 1973 and 1974, on a cash basis, with the

Internal Revenue Service at Chamblee, Ga. At the time her petition herein was filed, Parkinson resided in Biloxi, Miss.

During their taxable years ended December 31, 1973 and 1974, and for many years prior thereto, Creel was the president and Parkinson was the secretary-treasurer of Gulf Paving, Inc., Gulf Asphalt Plant, Inc., and Gulf Equipment Rentals, Inc.—all Mississippi corporations with offices and principal places of business in Gulfport, Miss. During their taxable years 1973 and 1974, both Creel and Parkinson were actively engaged in the management and operation of each of these three corporations and were salaried employees of Gulf Paving, Inc., and Gulf Asphalt Plant, Inc. During the years 1973 and 1974, the directors of all three corporations, Gulf Paving, Inc., Gulf Asphalt Plant, Inc., and Gulf Equipment Rentals, Inc., were Joseph Creel, Jonnie Parkinson, and Desmond M. Graham, Jr.

During their taxable years ended December 31, 1973 and 1974, petitioners Creel and Parkinson owned all the issued and outstanding stock of the three corporations as follows:

|  | *Gulf Paving, Inc.* | *Gulf Asphalt Plant, Inc.* | *Gulf Equipment Rentals, Inc.* |
|---|---|---|---|
| Creel ......... | 80 percent | 20 percent | 50 percent |
| Parkinson ... | 20 percent | 80 percent | 50 percent |

Throughout their taxable years 1973 and 1974, petitioners Creel and Parkinson had open-account loans from Gulf Paving, Inc., Gulf Asphalt Plant, Inc., and Gulf Equipment Rentals, Inc. During those taxable years, petitioner Creel owed the following monthly balances on his loans from each of the described corporations:

| | | *Monthly balances owed by Joseph Creel to:* | | |
|---|---|---|---|---|
| *Date* | *Gulf Paving, Inc.* | *Gulf Asphalt Plant, Inc.* | *Gulf Equipment Rentals, Inc.* | *Total* |
| 1/31/73 | $113,197.91 | $26,519.30 | $13,157.80 | $152,875.01 |
| 2/28/73 | 112,756.52 | 26,519.30 | 13,157.80 | 152,433.62 |
| 3/31/73 | 112,826.57 | 26,519.30 | 13,157.80 | 152,503.67 |
| 4/30/73 | 114,350.87 | 26,519.30 | 13,157.80 | 154,027.97 |
| 5/31/73 | 118,184.84 | 25,519.30 | 13,157.80 | 157,861.94 |
| 6/30/73 | 103,892.01 | 26,519.30 | 13,157.80 | 143,569.11 |
| 7/31/73 | 105,671.60 | 26,519.30 | 13,157.80 | 145,348.70 |
| 8/31/73 | 104,769.94 | 26,519.30 | 13,157.80 | 144,447.04 |
| 9/30/73 | 104,391.22 | 26,519.30 | 13,157.80 | 144,068.32 |
| 10/31/73 | 110,188.34 | 26,519.30 | 13,157.80 | 149,865.44 |

| | | | |
|---|---|---|---|
| 11/30/73 | $118,635.10 | $26,519.30 | $13,157.80 | $158,312.20 |
| 12/31/73 | 60,938.85 | 26,519.30 | 13,157.80 | 100,615.95 |
| 1/31/74 | 92,504.66 | 26,519.30 | 13,157.80 | 132,181.76 |
| 2/28/74 | 86,664.43 | 26,292.03 | 13,157.80 | 126,114.26 |
| 3/31/74 | 87,602.77 | 26,064.76 | 13,157.80 | 126,825.33 |
| 4/30/74 | 88,129.13 | 25,837.49 | 13,157.80 | 127,124.42 |
| 5/31/74 | 102,192.00 | 25,610.22 | 13,157.80 | 140,960.02 |
| 6/30/74 | 100,070.75 | 25,382.95 | 13,157.80 | 138,611.50 |
| 7/31/74 | 108,559.93 | 25,155.68 | 13,157.80 | 146,873.41 |
| 8/31/74 | 109,765.98 | 24,928.41 | 13,157.80 | 147,852.19 |
| 9/30/74 | 47,056.31 | 24,701.14 | 13,157.80 | 84,915.25 |
| 10/31/74 | 78,315.06 | 24,473.87 | 13,157.80 | 115,946.73 |
| 11/30/74 | 78,770.50 | 24,246.60 | 13,157.80 | 116,174.90 |
| 12/31/74 | 44,361.73 | 24,019.30 | 13,157.80 | 81,538.83 |

During her taxable years 1973 and 1974, petitioner Parkinson owed the following monthly balances on her loans from each of the described corporations:

*Monthly balances owed by Jonnie Parkinson to:*

| Date | Gulf Paving Inc. | Gulf Asphalt Plant, Inc. | Gulf Equipment Rentals, Inc. | Total |
|---|---|---|---|---|
| 1/31/73 | $98,370.18 | $18,240.20 | $3,364.00 | $119,974.38 |
| 2/28/73 | 97,295.72 | 18,240.20 | 3,364.00 | 118,899.92 |
| 3/31/73 | 96,221.26 | 18,240.20 | 3,364.00 | 117,825.46 |
| 4/30/73 | 96,957.93 | 18,240.20 | 3,364.00 | 118,562.13 |
| 5/31/73 | 96,064.16 | 18,240.20 | 3,364.00 | 117,668.36 |
| 6/30/73 | 96,348.55 | 18,240.20 | 3,364.00 | 117,952.75 |
| 7/31/73 | 97,528.59 | 18,240.20 | 3,364.00 | 119,132.79 |
| 8/31/73 | 96,608.59 | 18,240.20 | 3,364.00 | 118,212.79 |
| 9/30/73 | 95,767.54 | 18,240.20 | 3,364.00 | 117,371.74 |
| 10/31/73 | 84,700.07 | 18,240.20 | 3,364.00 | 106,304.27 |
| 11/30/73 | 83,282.14 | 18,240.20 | 3,364.00 | 104,886.34 |
| 12/31/73 | 25,345.46 | 18,240.20 | 3,364.00 | 46,949.66 |
| 1/31/74 | 56,601.06 | 18,240.20 | 3,364.00 | 78,205.26 |
| 2/28/74 | 57,205.86 | 18,240.20 | 3,364.00 | 78,810.06 |
| 3/31/74 | 57,463.31 | 18,240.20 | 3,364.00 | 79,067.51 |
| 4/30/74 | 54,661.65 | 18,240.20 | 3,364.00 | 76,265.85 |
| 5/31/74 | 68,191.98 | 18,240.20 | 3,364.00 | 89,796.18 |
| 6/30/74 | 69,560.28 | 18,240.20 | 3,364.00 | 91,164.48 |
| 7/31/74 | 72,782.53 | 18,240.20 | 3,364.00 | 94,386.73 |
| 8/31/74 | 86,005.98 | 18,240.20 | 3,364.00 | 107,610.18 |
| 9/30/74 | 32,524.21 | 18,240.20 | 3,364.00 | 54,128.41 |
| 10/31/74 | 63,524.21 | 18,240.20 | 3,364.00 | 85,128.41 |
| 11/30/74 | 38,538.91 | 18,240.20 | 3,364.00 | 60,143.11 |
| 12/31/74 | 6,773.68 | 18,240.20 | 3,364.00 | 28,377.88 |

No interest was charged to, or actually paid by, either petitioners Creel or Parkinson on the amounts they had bor-

rowed from their three corporations. The withdrawals made by Creel and Parkinson from Gulf Paving, Inc., in 1973 and 1974 were used to make payments on personal bank loans, to pay personal doctor bills, to pay personal life and general insurance bills, to pay personal Federal and State taxes, and to pay other personal obligations of the two petitioners.

At the end of each of the calendar years 1973 and 1974, Gulf Paving, Inc., owed the following creditors the following amounts:

|  | 12/31/73 | 12/31/74 |
| --- | --- | --- |
| Hancock Bank, Gulfport, Miss | $95,874.72 | $190,555.06 |
| Peoples Bank, Biloxi, Miss | 379,712.07 | 347,782.48 |
| Merchants Bank & Trust Co., Gulfport, Miss | 10,534.50 | 3,160.35 |
| Small Business Administration | 103,609.49 | 91,695.38 |
| C.I.T. Corp | 131,999.33 | 72,908.13 |
| Credit Alliance Corp | 0 | 39,164.70 |
| Industrial Credit Corp | 0 | 68,410.10 |
| G.E. Credit Corp | 26,757.03 | 12,741.60 |
|  | 748,487.14 | 826,417.80 |

All these indebtednesses were personally guaranteed jointly and severally, by petitioners Creel and Parkinson.

Each of the corporations, Gulf Paving, Inc., Gulf Asphalt Plant, Inc., and Gulf Equipment Rentals, Inc., had available earnings and profits in the following respective amounts on the dates indicated:

|  | 1/1/73 | 12/31/73 | 12/31/74 |
| --- | --- | --- | --- |
| Gulf Paving, Inc | $316,728 | $293,044 | $261,438 |
| Gulf Asphalt Plant, Inc | 213,075 | 205,746 | 45,702 |
| Gulf Equipment Rentals, Inc | 83,998 | 83,743 | 83,695 |

The parties have stipulated that, should we determine that petitioners Creel and Parkinson realized any type of taxable income with respect to the interest-free loans in this case, the following rates should apply to the monthly loan balances set out below:

| | |
|---|---|
| Jan. 31, 1973 ............................... | 6.00% |
| Feb. 28, 1973 ............................... | 6.25% |
| Mar. 31, 1973 ............................... | 6.50% |
| Apr. 30, 1973 ............................... | 6.50% |
| May 31, 1973 ............................... | 6.50% |
| June 30, 1973 ............................... | 5.25% |
| July 31, 1973—Dec. 31, 1973 ............ | 6.50% |
| Jan. 31, 1974—Dec. 31, 1974 ............ | 7.50% |

## OPINION

Petitioners Creel and Parkinson had interest-free loans from their wholly owned corporations outstanding during both of their taxable years in issue. During these same taxable years, petitioners were guarantors of certain large loans made by third parties to one of their corporations, Gulf Paving, Inc. Respondent has claimed deficiencies against both petitioners based upon the theory that their corporations' interest-free loans to petitioners constituted an actual transfer of value taxable to petitioners as ordinary income under the broad provisions of section 61. Respondent attempts to distinguish our decision of *Dean v. Commissioner*, 35 T.C. 1083 (1961), *[J. Simpson Dean]* in which we explicitly rejected respondent's "imputed interest" theory, on the basis "that the existence of corporate obligations guaranteed by petitioners for amounts in excess of the amounts petitioners borrowed from the corporations distinguishes the present cases from *J. Simpson Dean*." "In addition," argues respondent, "*J. Simpson Dean* was wrongly decided and should not be followed in the present case." Petitioners defend the correctness of our decision in *Dean v. Commissioner, supra,* but also argue that, if we should decide to reject *J. Simpson Dean* and impute income to them on the basis of their interest-free loans, they should be allowed offsetting section 163 deductions.

*J. Simpson Dean* was decided in 1961. Respondent did not nonacquiesce in that decision until 1973. (1973–2 C.B. 4.) Both prior and subsequent to his nonacquiescence in *Dean v. Commissioner, supra,* respondent has litigated, and lost, the question of whether or not an interest-free loan has any direct Federal income or gift tax effects.[1]

---

[1] See *Johnson v. United States,* 254 F. Supp 73 (N.D. Tex. 1966); *Saunders v. United States,* 294 F. Supp. 1276, 1282 (D. Hawaii 1968), revd. on another issue 450 F.2d 1047 (9th Cir. 1971); *Joseph Lupowitz Sons, Inc. v. Commissioner,* 497 F.2d 862 (3d Cir. 1974); *Crown v. Commissioner,* 67 T.C. 1060

We recently reviewed our decision in *Dean v. Commissioner, supra. Greenspun v. Commissioner,* 72 T.C. 931 (1979) (reviewed by the Court). In *Greenspun v. Commissioner, supra,* we found that the petitioner therein had received a bargain interest-rate loan as a quid pro quo for certain services he actually subsequently performed. We went on to hold, however, that as the parties had, in effect, stipulated that had petitioner paid a regular rate on this loan, the full amount of the interest payments would have been deductible, we would continue to adhere to our *Dean* rationale. Here also, there is no indication in the record that, had petitioners paid full interest to their corporations, these payments would not have been deductible. We, therefore, decline to reach the issue.

We again decline, therefore, respondent's invitation to reverse our decision in *Dean.* Since that holding, Congress has not passed any specific enabling statute (a la section 482) creating income where none exists, and we are not here bound by the decision of a relevant circuit court opinion under the rule of our case in *Golsen v. Commissioner,* 54 T.C. 742, 757 (1970).

However, while we refuse to hold that the mere loan of money interest free creates income to the borrower, we think that the large amounts owed by Gulf Paving, Inc., and guaranteed by petitioners herein during the taxable years in issue, distinguish that corporation's loans to petitioners from the loans to petitioners from their other two corporations.

The record shows that Gulf Paving, Inc., owed a variety of third party creditors large amounts of money during each of the calendar years 1973 and 1974. It is clear that these loans were arm's-length loans for which the borrower was charged interest.

We think the conclusion inescapable that, to the extent that it had made interest-free loans to petitioners, Gulf Paving, Inc., was required to carry interest-bearing obligations to third parties. We believe and hold, therefore, that the substance of the transaction before us was that Gulf Paving, Inc., acted as petitioners' agent in obtaining loans from its various creditors to petitioners, and that it paid interest to these creditors on behalf of petitioners. The reality of this holding is made evident, or at

---

(1977), affd. 585 F.2d 234 (7th Cir. 1978); *Suttle v. Commissioner,* T.C. Memo. 1978–393 (37 T.C.M. 1638, 1978 P–H Memo T.C. par 78,393).

the least reinforced, by the fact that petitioners were required to guarantee Gulf Paving, Inc.'s loans during the taxable years before us. Thus, we conclude that Gulf Paving, Inc.'s payment of that amount of interest allocable to its interest-free loans to petitioners was actually a discharge by Gulf Paving, Inc., of petitioners' own obligations. To the extent that these *actual* payments were *in fact* made during the taxable years in issue, the taxpayers are deemed to have both received dividend income and made an interest payment. Of course, to the extent petitioners' total interest-free loans during the taxable years before us exceeded their interest-free loans from Gulf Paving, Inc., these loans have no direct tax effect. *Dean v. Commissioner, supra.*

*Decisions will be entered under Rule 155.*