**COMMISSIONER OF INTERNAL REVENUE, Petitioner-Appellant,**

v.

**Herman M. GREENSPUN and Barbara J. Greenspun, Respondents-Appellees.**

**No. 79–7624.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 1, 1981.

Decided Feb. 24, 1982.

Jonathan S. Cohen, Washington, D. C., argued, for petitioner-appellant; Gilbert E. Andrews, Helen A. Buckley, M. Carr Fergu-

son, N. Jerold Cohen, Washington, D. C., on brief.

Edward P. Morgan, Welch & Morgan, Washington, D. C., for respondents-appellees.

Before TANG and ALARCON, Circuit Judges, and ORRICK,* District Judge.

TANG, Circuit Judge:

Herman M. Greenspun received a loan at a three percent interest rate when the prevailing market rate was six percent. The Commissioner of Internal Revenue (Commissioner) determined deficiencies in Greenspun's 1967 and 1969 federal income taxes on the theory that Greenspun had realized gross income in an amount equal to the economic value between the market rate of interest and the actual interest rate on his loan. The Tax Court found in favor of Greenspun, 72 T.C. 931 (1979). We affirm.

I

Facts

The facts in this case are undisputed and are fully chronicled in the Tax Court's opinion. For our purposes, it is necessary to discuss only the most pertinent facts.

In 1966, Howard Hughes moved to Las Vegas, Nevada. Not long after his arrival, Hughes became interested in making large investments and acquisitions in the Las Vegas area. Anticipating opposition to many of his purchases, Hughes sought to acquire local radio, television, and newspaper interests in order to create a favorable public image by manipulating the press. During this time Greenspun was the owner, publisher, and editor of the Las Vegas Sun newspaper and the owner of KLAS–TV Channel 8 in Las Vegas. In 1967, Hughes offered to buy the newspaper and the television station, but Greenspun was willing to sell only the television station.

Still concerned about the newspaper's potential influence on local public opinion, but realizing that he could not obtain direct control of the paper, Hughes sought to acquire indirect control by offering Greenspun a four million dollar interest-free loan. Greenspun accepted with the understanding that Hughes expected friendly press coverage in exchange for the loan. The loan terms were subsequently modified to anticipate problems with the Internal Revenue Service. The final loan package consisted of a four million dollar loan at three percent interest per year for an eight-year term beginning in 1967. At that time, the minimum interest rate at which Greenspun could have borrowed a comparable sum from a commercial lending institution was six percent.

From 1967 to 1969, Greenspun published numerous articles and editorials in the Las Vegas Sun promoting Hughes and his Las Vegas operations. Greenspun also voluntarily appeared before the Nevada Gaming Policy Board and publicly voiced his support for Hughes' proposed purchase of two Las Vegas casinos. Greenspun's defense and support of Hughes' multiple casino ownership was contrary to his prior position before the Board opposing multiple casino ownership. In 1969, the loan term was extended from eight years to thirty-five years.

The Commissioner determined a $469,-613.77 deficiency in Greenspun's 1967 federal income tax and a $1,157,956.16 deficiency in his 1969 taxes. The deficiencies were premised on the theory that Greenspun had realized gross income in an amount equal to the economic value between the three percent interest he paid to Hughes and the six percent he would have paid if he had borrowed the money from a commercial establishment.

Relying principally on its earlier decision in *Dean v. Commissioner*, 35 T.C. 1083 (1961), the Tax Court held that although

---

* Honorable William H. Orrick, Jr., United States District Judge for the Northern District of California, sitting by designation.

the loan's preferential interest rate represented consideration given by Hughes in exchange for favorable news coverage by Greenspun, Greenspun realized no taxable income upon receipt of the loan. In the court below and now on appeal, the Commissioner argues that *Dean* was wrongly decided and should no longer be followed.

## II

### Analysis

■ In *Dean*, the Tax Court held that the use of funds from an interest-free loan results in no taxable benefit to the borrower. The court reasoned that had the taxpayers borrowed the money on interest-bearing notes, they would have been entitled to an interest deduction under I.R.C. § 163 for any interest paid. Giving effect to the economic reality of the transaction, the court concluded that the result was a "washout"—the taxable benefit being cancelled by the corresponding interest deduction. 35 T.C. at 1090. The court applied the *Dean* reasoning in the present case and held that Greenspun realized no taxable gain upon receipt of the low-interest loan because the inclusion of the loan's economic benefit (the interest differential) in gross income would be fully deductible under I.R.C. § 163.

The Commissioner argues that the rule established in *Dean* should no longer be followed because the Internal Revenue Code does not provide for an interest deduction for interest neither paid nor incurred. Although we can appreciate the Commissioner's argument, the fact of the matter is that *Dean* has been controlling precedent for almost two decades and has been relied upon by countless numbers of taxpayers.

Indeed before *Dean* was decided, the administrative practice with respect to interest-free loans had existed for some 48 years. *Dean* merely gave judicial effect to this practice.

Despite the far-reaching implications of *Dean*, the Commissioner failed to appeal the decision and did not announce his "nonacquiescence" until some 12 years later. *See* 1973–2 C.B. 4. Since that time the Commissioner has mounted an unsuccessful attempt in the Court of Appeals to have *Dean* overruled.[1] In *Suttle v. Commissioner*, 625 F.2d 1127 (4th Cir. 1980), a case involving taxpayers who received interest-free loans, the Commissioner argued that because the taxpayers neither paid any interest nor incurred an obligation to pay interest, there was no basis for an off-setting "washout" interest deduction. The *Suttle* court, finding the *Dean* rationale persuasive, summarily rejected the Commissioner's argument and affirmed the decision of the Tax Court. *Id.* at 1128.

In *Martin v. Commissioner*, 649 F.2d 1133 (5th Cir. 1981), the Commissioner launched the same attack on the *Dean* decision. The majority, while recognizing the persuasive points raised by the dissent, refused to disturb *Dean* after nearly 20 years because they were uncertain whether the benefits of the solution proposed by the dissent would "outweigh the loss of national uniformity in the application of our tax laws." *Id.* at 1134. And, in *Beaton v. Commissioner*, 664 F.2d 315 (1st Cir. 1981), a case involving the same issue as that presented in *Suttle* and *Martin*, the court refused to overrule *Dean* because it would "result in uncertainty and the uneven application of the tax law." *Id.* at 317.

■ We too are unwilling to disturb *Dean* at this late date. Too much water has

---

1. The Commissioner has been equally unsuccessful in persuading the Tax Court to overrule *Dean. See Trowbridge v. Commissioner*, 1981 Tax Ct.Mem.Dec. (P–H) ¶ 81,190; *Baker v. Commissioner*, 75 T.C. 166 (1980); *Beaton v. Commissioner*, 40 Tax Ct.Mem.Dec. (CCH) 1324 (1980); *aff'd*, 664 F.2d 315 (1st Cir. 1981); *Parks v. Commissioner*, 40 Tax Ct.Mem.Dec. (CCH) 1228 (1980), *appeal pending*, (6th Cir. 1723–77); *Estate of Liechtung v. Commissioner*, 40 Tax Ct.Mem.Dec. (CCH) 1118 (1980); *Creel v. Commissioner*, 72 T.C. 1173 (1979), *aff'd sub nom. Martin v. Commissioner*, 649 F.2d 1133 (5th Cir. 1981); *Zager v. Commissioner*, 72 T.C. 1009, *aff'd sub nom. Martin v. Commissioner*, 649 F.2d 1133 (5th Cir. 1981); *Martin v. Commissioner*, 39 Tax Ct.Mem.Dec. (CCH) 531 (1979), *aff'd*, 649 F.2d 1133 (1981); *Suttle v. Commissioner*, 37 Tax Ct.Mem.Dec. (CCH) 1638 (1978), *aff'd*, 625 F.2d 1127 (4th Cir. 1980); *Lisle v. Commissioner*, 1976 Tax Ct.Mem.Dec. (P–H) ¶ 76,140.

passed under the bridge to warrant judicial reexamination of the principles underlying the decision or the problems generated by it. Where, as here, the Government seeks to modify a principle of taxation so firmly entrenched in our jurisprudence, it should turn to Congress, not to the courts. As noted by the Supreme Court in *United States v. Byrum*, 408 U.S. 125, 135, 92 S.Ct. 2382, 2389, 33 L.Ed.2d 283 (1971):

> Courts properly have been reluctant to depart from an interpretation of tax law which has been generally accepted when the departure could have potentially far-reaching consequences. When a principle of taxation requires reexamination, Congress is better equipped than a court to define precisely the type of conduct which results in tax consequences. When courts readily undertake such tasks, taxpayers may not rely with assurance on what appear to be established rules lest they be subsequently overturned. Legislative enactments, on the other hand, although not always free from ambiguity, at least afford the taxpayers advance warning.

For the foregoing reasons, we decline to overrule *Dean*; we therefore affirm the judgment of the Tax Court.

AFFIRMED.