CLIFFORD SPICKLER and DEBRA SPICKLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spickler v. Commissioner
Docket No. 18957-85.
United States Tax Court
T.C. Memo 1986-598; 1986 Tax Ct. Memo LEXIS 10; 52 T.C.M. (CCH) 1241; T.C.M. (RIA) 86598; December 23, 1986. John R. McDonald and Paul J. Munson, for the petitioners. Genelle F. Forsberg, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $23,508.49 and $10,559 in petitioners' Federal income taxes for 1981 and 1982, respectively. After concessions, the issue for decision is whether interest earned on funds allegedly loaned by petitioner Clifford Spickler (Mr. Spickler) to his minor children is taxable to petitioners. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners were residents of Wisconsin at the time they filed their petition. Petitioners filed joint individual income tax returns for 1981 and 1982. During the years in issue, Mr. *12 Spickler was sole shareholder of Spickler Enterprises, Ltd. (the corporation), a corporation that operated a home improvement division and a recreational vehicle division. Petitioner Debra Spickler (Mrs. Spickler) was employed as the office manager of the recreational vehicle division of the corporation. Mrs. Spickler did most of the banking for the corporation. Mr. Spickler received compensation from the corporation of $245,000 in 1981 and $220,000 in 1982. Mrs. Spickler received compensation from the corporation of $29,098.96 in 1981 and $52,407.16 in 1982. During 1981 and 1982, Phyllis Erickson (Erickson) was employed as the bookkeeper of the home improvement division of the corporation. She was also an officer of the corporation. During the years in issue, Mr. Spickler had two children by a prior marriage -- Christian, born June 24, 1967, and Clichelle, born December 8, 1968. Mr. and Mrs. Spickler had two children -- Collin, born November 18, 1977, and Cari, born June 29, 1979. During 1981, the corporation received a substantial amount of cash from the sale of the recreational vehicle division's inventory. The corporation made noninterest-bearing loans to petitioner *13 in 1981 and 1982. As of January 26, 1981, the balance of such loans was $3,500. As of July 31, 1982, the balance of such loans was $321,543.26. During 1980, 1981, and 1982, Mr. Spickler transferred funds from his personal checking account in the form of "loans" to his children as follows: Christian (Chris) Spickler
Date
Amount
March 26, 1980
$50,000
December 15, 1980
50,000
April 8, 1981
400
September 20, 1982
1,000
Clichelle Spickler
May 7, 1981
$50,000
Collin Spickler
May 7, 1981
$50,000
September 20, 1982
100
December 15, 1982
200
Cari Spickler
May 7, 1981
$50,000
September 20, 1982
150
December 15, 1982
200
On June 23, 1981, a check for $100,000 was drawn on the corporation's bank account payable to Community State Bank. The money was invested in a short-term repurchase agreement at Community State Bank. The transfer was recorded on the corporate books as a loan from the corporation to Mr. Spickler. Community State Bank initially recorded the transactions in the name of the corporation, but thereafter changed its records to record the transactions in the name of Mr. Spickler's son Christian. All of *14 the amounts transferred to the children as set forth above were the subject of documents in the form of "promissory notes," payable on demand and noninterest-bearing. The notes were prepared by Erickson. Some of the notes were signed in the name of the child by Mr. Spickler. Some of the notes were signed by Mrs. Spickler and by Erickson as "custodians" for the children. The funds that were the subject of transfers to the children were invested in short-term (approximately 30 days) certificates of deposit at First Financial Savings and Loan (First Financial, formerly Northwest Savings and Loan), as well as in repurchase agreements at Community State Bank. The funds were not segregated but were combined with other funds of the children and with funds of Mrs. Spickler's sister. At the end of the year, Mr. Spickler's accountant and return preparer allocated the interest income among the children by computing the average interest rate received on the certificates of deposit and applying it to the amount of funds held in the name of each child. As of June 23, 1981, the amounts transferred by Mr. Spickler to his children totalled $350,400. As of September 20, 1982, the amounts transferred *15 by Mr. Spickler to his children totalled $351,650. During 1982, the funds were transferred back to Mr. Spickler or to the corporation as follows: Date
From Account At:
Amount
1/31/82
Community State Bank
$ 20,000.00
2/2/82
Community State Bank
12,000.00
2/8/82
First Financial
20,000.00
3/18/82
Community State Bank
65,000.00
4/6/82
Community State Bank
5,000.00
9/1/82
First Financial
46,715.10
9/30/82
First Financial
100,000.00
12/9/82
First Financial
93,181.31
12/31/82
First Financial
9,303.03
TOTAL
$371,199.44
On December 31, 1982, the funds remaining from the repurchase agreement at Community State Bank in the amount of $107,040.15 were deposited in Mr. Spickler's checking account at Community State Bank. Checks were then issued to petitioners' children in the amounts of $42,307.76 to Clichelle, $31,264.65 to Collin, and $31,242.02 to Cari. The checks were deposited into new accounts at Community State Bank. The signature cards for the new accounts were signed for the children by Mr. Spickler. On December 31, 1986, Mr. Spickler executed a document in the form of a promissory note for $75,549.34, payable to his son Christian. *16 The said amount represented a portion of the funds originally transferred to Christian by Mr. Spickler. Federal income tax returns were filed for Christian, Clichelle, Collin, and Cari for 1981 and 1982, reporting interest earned from First Financial and from Community State Bank.The tax returns for Collin and Cari were signed by Mr. Spickler. The tax payable on the interest income reported by the children was substantially less than the tax that would have been owed on the interest income if that income had been reported on petitioners' income tax returns for 1981 and 1982. Respondent determined that interest income of $40,671 for 1981 and $21,118 for 1982, earned on the funds "borrowed", was petitioners' income rather than income of the children because Mr. Spickler did not relinquish control over the property that produced the income. Respondent also made other adjustments that are now agreed to by petitioners. ULTIMATE FINDINGS OF FACT The transfers by Mr. Spickler to his children were not bona fide loans. Mr. Spickler retained control over the funds and other incidents of ownership, and the interest earned on the funds is taxable to petitioners. OPINION Petitioners *17 contend that the amounts transferred to their children in 1980, 1981, and 1982 were bona fide loans and that the interest earned on those amounts during 1981 and 1982 was properly reported by and taxable to the children. Respondent contends that the transfers were an unsuccessful attempt to assign petitioners' income to their children in order to take advantage of lower tax rates applicable to their children's returns. Petitioners have the burden of proving that respondent's determination is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners contend that because the transfers were documented by promissory notes and because Mrs. Spickler and Erickson acted as "custodians" for the children's funds the transfers were bona fide loans and must be regarded as such for tax purposes. Erickson testified that the notes were prepared and signed at the time the transfers were made. Mrs. Spickler testified that she made the investment decisions concerning the funds. Mr. Spickler testified that he did not retain *18 any control over the funds after the purported loans. We are not, however, persuaded by this testimony that Mr. Spickler gave up control over the funds. First, the testimony that the notes were signed on the dates they bear is contradicted by evidence that at least one of the notes was not signed by Mr. Spickler until after a payment on the note had been made. A note dated May 7, 1981, for $50,000 payable to Clichelle Spickler was marked "pd 12-31-81 $6,000" by Erickson. During the course of an audit, Mr. Spickler provided a copy of the note with the above notation of payment to respondent's agent. The copy provided during the audit did not show Mr. Spickler's signature. A copy presented at the time of trial did show Mr. Spickler's signature and additional dates of payment, but otherwise appeared to be a later copy of the same document presented by Mr. Spickler to the auditing agent. Neither Mr. Spickler nor Erickson provided any explanation of this discrepancy. In their brief, petitioners claim that Mr. Spickler was "confused." Such confusion does not cure the unreliability of the testimony of Erickson and Mr. Spickler, however. Second, the evidence does not reflect any *19 differences in the handling of funds purportedly loaned to the children and other funds of petitioners. Mrs. Spickler testified that she did all of the banking for the corporation. The records of the financial institutions in evidence show consecutive or contemporaneous similar transactions in the name of the corporation, petitioners, and the children. None of the witnesses indicated any way in which the transactions involving funds purportedly loaned to the children were inconsistent with or adverse to continuing ownership of the funds by petitioners. Third, the demand nature of the notes, the short-term nature of the investments, and the testimony of the witnesses convince us that the funds were at all times within the control of Mr. Spickler so that he could use them as working capital of the corporation when necessary. Mr. Spickler testified: Q. [by petitioners' counsel] At the time you made these loans, did you have any expectations as to whether or not you would be repaid or not? A. Yes. They were -- Q. What were those expectations? A. They were on demand, we set it up, because not knowing what the future of the business was at that time, we made them demand *20 notes so if at any time we felt that we needed that money, we could again demand the money and have it for operation of the business. Q. And did you ever communicate that business concern of yours to either of the custodians or both of them? A. Yes, I think so, in making the notes on demand, yes. * * * Q. [by respondent's counsel] You have indicated that the sourcde of the funds that you loaned to your children was from an auction of some of the company's inventory. Prior to making the loans to your children, you had some of these excess funds from the corporation invested in a repurchase agreement at First National Bank of Chippewa Falls and other banks. Is that correct? A. I don't recollect. Q. Do you recall that the first loan that you made to Chris in 1980 was a transfer of funds from the corporation's repurchase agreement at the First National Bank to a new repurchase agreement at the Community State Bank? A. I don't recall that. Q. Other than the amount that you loaned to your children, where did you invest the other excess funds of the corporation during 1981 and 1982? A. We bought some property. Q. Additional rental property? A. Additional *21 rental property, yes. Q. How about after 1982, when the loan funds were repaid. Where did you invest these excess funds of the corporation? A. That was inventory. Q. Did you use it to expand your business, then, at that time? A. Yes, yes. Erickson also testified that the notes "were to be paid back when needed." Finally, the record does not support an inference of any reason for the transactions other than reducing the effective rate of tax on the earnings from the funds. Mr. Spickler testified in a vague manner that he wished to build estates for his children, although he also acknowledged his own tax motivation. Unlike the cases relied on by petitioners, there is no evidence here that the alleged borrowers actually received the benefit of the funds. There is no reliable evidence that the investments were chosen to benefit long-term interests of the children, rather than to protect liquidity interests of Mr. Spickler and his corporation. In any event, those cases relied on by petitioners, e.g., Hambuechen v. Commissioner,43 T.C. 90 (1964), and Gilbert v. Commissioner,248 F.2d 399 (2d Cir. 1957), set forth criteria for *22 distinguishing debt from equity and did not involve minor children. As in other family transactions, the purported loans here must be subjected to close scrutiny. Obviously the testimony of petitioners and of Mr. Spickler's employee, Erickson, is not disinterested. To the extent that it is vague, inconsistent, and improbable, we need not accept it. See, e.g., Factor v. Commissioner,281 F.2d 100, 111-114 (9th Cir. 1960); Winters v. Dallman,238 F.2d 912, 914 (7th Cir. 1956). After consideration of all of the evidence, we conclude that petitioners have not satisfied their burden of proving that the loans in question were bona fide or that Mr. Spickler gave up control over the funds. [1]
Moreover, petitioners' legal arguments are without merit. They assert that "interest-free loans have long been recognized as exempt from income tax consequences," citing a line of cases involving tax consequences of such loans to the borrower, e.g., Dean v. Commissioner,35 T.C. 1083 (1961), *23 or gift tax consequences, e.g., Dickman v. Commissioner,465 U.S. 330 (1984). Those cases do not address the question of taxability of income earned on funds that were the subject of an interest-free loan. They are, therefore, totally inapposite to the present situation. Petitioners also argue that Mrs. Spickler and Erickson acted in a fiduciary capacity for the benefit of the children and that a trust relationship was established under Wisconsin law. This argument, however, does not help petitioners' cause. If the circumstances of this case were analogized to a trust, the interest income would still be taxable to Mr. Spickler as the grantor. See sections 671-677.[2] Cases involving family trusts confirm the long-standing general rule applicable to this case, i.e., taxpayers cannot avoid the taxation of their income by assigning that income without giving up ownership of the underlying property. Helvering v. Clifford,309 U.S. 331 (1940); Schulz v. Commissioner,686 F.2d 490 (7th Cir. 1982); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980). Thus, in Schulz v. Commissioner,supra, *24 the taxpayers transferred all of their real and personal property, including income-producing property and their rights to receive future income for services, to a trust. The Court of Appeals for the Seventh Circuit applied the anticipatory assignment of income doctrine as well as the grantor trust rules to conclude that the income was taxable to the transferors. Whether an anticipatory assignment of income is made with respect to earnings from property, as in Helvering v. Horst,311 U.S. 112 (1940), or with respect to compensation for services, as in United States v. Basye,410 U.S. 441 (1973), the "seminal principle" is the same "despite the novelty and ingenuity of [the] arrangement." Armantrout v. Commissioner,570 F.2d 210, 212-213 (7th Cir. 1978). The income is taxable to the assignor, in this case Mr. Spickler. Because all other adjustments have been conceded by petitioners, Decision will be entered for the respondent.
Footnotes
1. See Humphrey v. Commissioner,T.C. Memo. 1969-89; Farber v. United States, 83-1 USTC par. 9221, 52 AFTR 2d 83↩-5794 (D. Colo. 1983).
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩