MAX ZAGER AND GOLDIE R. ZAGER, PETITIONERS v.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11051–78.      Filed September 5, 1979.

*William L. Tankersley III*, for the petitioners.
*Edwina L. Link*, for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined deficiencies in income tax against petitioners, husband and wife, in the amounts of $6,179.75 and $6,627.18, for the calendar years 1975 and 1976, respectively. After concessions by petitioners as to certain adjustments made by the Commissioner, there remains in controversy only whether petitioners realized taxable income in respect of their interest-free use of funds borrowed from a corporation in which they were the dominant stockholders. The case was submitted on the basis of a stipulation of facts.

Petitioners, residents of North Miami Beach, Fla., when they filed their petition herein, filed joint income tax returns for 1975

and 1976 on the cash basis of accounting. During 1975 and 1976, and at all other times relevant to this case, petitioners owned 80 percent of the outstanding stock of Standard Enterprises, Inc., a North Carolina corporation. In addition, they were officers and salaried employees of the corporation during this period. The remaining 20 percent of the stock was owned by their children. The corporation was a personal holding company during the last 8 months of petitioners' calendar year 1976, but was not a personal holding company during 1975 or the first 4 months of 1976.

Prior to 1975 and 1976, the corporation made interest-free loans to petitioners on open accounts receivable. The outstanding balance of such loans was in excess of $100,000 in the years prior to 1975, but such balance was $88,988.30 in each of the years 1975 and 1976. Petitioners have since repaid the full amount thus outstanding. The Commissioner determined that "The economic benefit to you from free use of $88,988.30 of the corporation's funds," measured by the 7 percent prime interest rate being charged by area banks in those years, was $6,229.18 for each year, and he increased petitioners' taxable income accordingly.

The Government recognizes that its position is contrary to *Dean v. Commissioner,* 35 T.C. 1083 (1961), but it argues that the decision in *Dean* was wrong and asks that it be overruled. We adhere to the result reached in that case.

To be sure, the principle of stare decisis is not the embodiment of an inexorable rule of law. Cf. *Helvering v. Hallock,* 309 U.S. 106, 119 (1940). But the circumstances relating to the issue now before us are of such character as to call for the application of the doctrine of stare decisis rather than the exception thereto that was found appropriate in *Hallock.* A review of the history of the problem is important in the context of the course which the Government is asking us to follow here.

Our modern income tax laws have been in effect continuously since 1913, and the various applicable statutes, using one form of words or another, have characterized the income subject to tax in broad and sweeping terms. Yet, at the time *Dean* was presented to this Court, there was no indication that there had previously ever been even a single instance in which the Government had taken the position, either in litigation (successfully or unsuccessfully) or by rule, regulation, or administrative

practice in any manner, that an interest-free loan by a corporation to its stockholder-officers resulted in the realization of income which the statute sought to reach. Indeed, the position advocated in this respect by the Government in *Dean* would appear to have been nothing more than an afterthought. No such issue was raised in the deficiency notice or even in the answer as originally filed in response to the taxpayers' petition therein. The point was first raised in an amended answer and appears to have had its origin in a fortuitous dictum in a then-recent Memorandum Opinion of this Court involving gift taxes of the same taxpayers which had been promulgated several months prior to the filing of the amended answer. (See 35 T.C. at 1089.) The theory was further refined in the Government's brief.

The problems gave us much difficulty because there appeared superficially to be but little difference between the interest-free use of corporate funds and the rent-free occupancy of corporate property by a stockholder or officer that had been held to constitute a tax benefit the fair value of which was includable in gross income. Conceptually, it did seem that the same result should be reached in both types of cases. Yet, the fact that the Treasury had not theretofore—for some 48 years—attempted to treat as income the benefits attributable to such interest-free loans was highly troublesome. We searched for a distinction that would support the administrative practice which had endured for so long a period. And we found a difference in that if the taxpayer had undertaken to pay interest or rent, he would generally have been entitled to a deduction for the payment of interest but not for rent. Thus, the tax benefit resulting from the exclusion from gross income of any amount attributable to such an interest-free loan would be matched dollar for dollar by the tax benefit attributable to the interest deduction in the case of an interest-bearing loan, assuming of course that the interest were fixed at a fair rate. To be sure, there were peripheral situations in which the distinction would not hold, but in general, the neutralizing effect of the interest deduction did seem to afford a basis for supporting the differing treatment which the Government itself had long accorded to interest-free loans and rent-free use of property. In reaching our conclusion, we recognized that "the question may not be completely free from doubt " (35 T.C. at 1089) and our opinion, although reflecting the views of a majority of the Court, was not unanimous.

Notwithstanding the potential importance of *Dean*, the Government failed to pursue an appeal from our decision and accepted the result for a period of some 12 years thereafter. It was not until 1973 that the Commissioner announced his "nonacquiescence," 1973–2 C.B. 4, and mounted a campaign to have *Dean* overruled. The matter was squarely presented in *Suttle v. Commissioner*, 37 T.C.M. 1638, 47 P-H Memo T.C. par. 78,393 (1978), but the Court reaffirmed its holding in *Dean*. Cf. *Greenspun v. Commissioner*, 72 T.C. 931 (1979).

The Government has again asked us to overrule *Dean* in the present case, and has filed a strong brief in support of its position. We recognize that we perhaps made too sweeping a statement in *Dean* when we said without qualification that "an interest-free loan results in no taxable gain to the borrower." (35 T.C. at 1090.) Thus, if the indebtedness were incurred by the stockholder or officer to purchase or carry tax-exempt bonds, a different result might perhaps be reached in view of the provision of section 265(2) of the Code which disallows a deduction for interest paid in respect of such indebtedness.[1] See *Greenspun v. Commissioner, supra* at 948–949. However, that is a matter that need not be decided here, and it, as well as other situations not involving the stockholder-officer-employee situation, can be addressed when presented in litigation specifically raising the issue.

In urging us to overrule *Dean*, the Government does not dispute that its argument on the merits represents a change of position reflected in the administration of the tax laws. It points out, quite accurately, that the Commissioner may retroactively correct mistakes of law, citing *Dixon v. United States*, 381 U.S. 68, 72–73 (1965), and *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183–184, rehearing denied 353 U.S. 989 (1957). Indeed, it could have supported its position in this respect still more forcefully, for even where the prior practice is embodied in a formal Treasury regulation that has survived one

---

[1]The question, of course, is whether the benefit derived from the interest-free loan is to be treated as having the quality of realized income; but it is not accurate to suggest that the availability of a related deduction is wholly irrelevant in determining whether the benefit involved should be treated as realized income. Thus, the repayment of a loan is ordinarily considered as a return of capital and not as a receipt of income; but if the creditor has previously charged off that loan and taken a bad-debt deduction in a prior year, the subsequent repayment is includable in gross income. Of course, the analogy is not perfect, but it serves to indicate that the quality of a benefit or receipt as income may be affected by considerations extraneous to the inherent nature of the benefit or receipt itself.

or more reenactments of the statute, the Commissioner may not be prevented from promulgating a subsequent regulation reflecting a substantial change in the application of the statute. *Helvering v. Wilshire Oil Co.*, 308 U.S. 90 (1939). But what we have here is something different in degree.

In the case at bar, the prior practice spanned a period of 60 years—from 1913 to 1973. There were undoubtedly at least many thousands of instances during this period when the issue could have been raised. We know that there are a great number of corporations that are wholly owned or subject to the control of a dominant stockholder. And we also know from the records in numerous cases that have been before us that the flow of funds—often on an informal basis—between such stockholder and his corporation is a very common occurrence. Sometimes, notes are executed; at other times, there are merely book entries; and at still other times, there may be no documentation whatever. *Dean* gave effect to the administrative practice that had existed for 48 years as of that time in respect of the non-interest-bearing loans in such situations, and that practice continued thereafter for another 12 years until the Commissioner took his present position by publishing his "nonacquiescence." Moreover, although cogent theoretical arguments could be advanced both for and against the result reached in *Dean*, it has now been on the books for 18 years. Too much water has passed over the dam to warrant reexamining the situation judicially. We think that the application of the principle of stare decisis is peculiarly called for here, and that if a contrary result is deemed desirable, the appropriate remedy should be legislative rather than judicial.

It may be noted that the economic benefits accruing to the stockholder-officer-employee by reason of an interest-free loan are somewhat akin to many fringe benefits that have been enjoyed without tax incidence since 1913. To be sure, some fringe benefits—e.g., rent-free use of corporate property—have been taxed. But many others—e.g., free personal transportation for railroad and airline employees and their families,[2] courtesy discounts for employees of retail establishments, etc.—have traditionally been treated as nontaxable, notwithstanding the

---

[2]As to railroad travel, see O.D. 946, 4 C.B. 110 (1921). There would not appear to be any difference as to free airline travel, and we do not understand that any distinction has been drawn administratively as to the latter.

familiar and oft-repeated statement that in considering what is to be included in gross income Congress intended to use its power to the full extent. *Douglas v. Willcuts,* 296 U.S. 1, 9 (1935); *Helvering v. Clifford,* 309 U.S. 331, 334 (1940); *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 429 (1955). Plainly, such fringe benefits could theoretically be taxed if the full sweep of these cases were to be given effect,[3] but, whether because of administrative considerations or otherwise, the fact is that many such fringe benefits have been treated over the years as nontaxable. In 1975, the Treasury issued a discussion draft of proposed regulations undertaking a comprehensive reexamination of employee fringe benefits in the stockholder-officer-employee field. 40 Fed. Reg. 41118 (1975). That action aroused widespread opposition and the Treasury withdrew its proposals somewhat more than a year later. 41 Fed. Reg. 56334 (1976). Thereafter, Congress forbade the promulgation of new fringe benefit regulations during a limited period of time so that it might consider possible legislation in respect of the problem. Sec. 1, Pub. L. 95–427, 92 Stat. 996. See H. Rept. 95–1232 (1978), 1978–2 C.B. 365. Whether the taxability of the benefits derived from interest-free loans falls within the area of the matters thus under consideration is not of critical importance. The point is that it is sufficiently related to them that if change is desired, a legislative solution would appear to be more appropriate than a judicial departure from the rule of stare decisis.

*Decision will be entered under Rule 155.*

---

[3]The notion expressed in O.D. 946, n. 2 *supra,* that the free railroad travel for employees and their families represents a corporate "gift" seems hardly realistic.