JACK AND FLORENCE BAKER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3914–77.     Filed October 22, 1980.

*Benjamin Lewis*, for the petitioners.
*Joan Ronder Domike*, for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined deficiencies in petitioners' income taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1973 | $1,575 |
| 1974 | 3,462 |
| 1975 | 1,976 |

After concessions, the only issue presented by this fully stipulated case is whether Jack Baker, the husband petitioner, realized taxable income as a consequence of interest-free loans from Sue Brett, Inc., of which he is the president. He, his wife, and their children own all the issued and outstanding common stock of the corporation.

At the time of the filing of their petition herein, petitioners were New York residents.

During the years in issue, Mr. Baker maintained a running loan account with the corporation, and used the money borrowed to make estimated tax payments (Federal, State, and city). The loan account was maintained on the corporation's books as "Loans receivable—Officers." There were no notes, no specific plan of repayment, and no interest was charged or paid. During 1973, Mr. Baker made monthly repayments in amounts of $1,000 to $3,000. In 1974, he made one repayment of $50,000, and made no repayments during 1975.

In the notice of deficiency, the Commissioner determined that petitioners realized unreported taxable income with respect to the stipulated average balances of the interest-free loans from the corporation (based on specified interest rates), as shown in the following schedule:

| Year | Average loan balance | Interest rate | Interest income |
|------|---------------------|---------------|-----------------|
| 1973 | $36,870 | 9 percent | $3,318 |
| 1974 | 95,834 | 8½ percent | 8,146 |
| 1975 | 52,689 | 7½ percent | 3,952 |

The parties have stipulated that at a minimum, Mr. Baker would have had to pay interest at the above rates if he had borrowed from a lending institution.

At all times relevant, Sue Brett's accumulated earnings and profits were in excess of the amounts determined by the Commissioner to be the equivalent of interest on the interest-free loans. Mr. Baker's annual salary from Sue Brett, Inc., was

$78,000 in 1973 and 1974, and $79,500 in 1975. The parties have agreed that Mr. Baker's compensation from the corporation was not unreasonable and that additional compensation equivalent to the amounts determined by the Commissioner to be additional income to him would not result in unreasonable compensation if paid by the corporation.

On December 31, 1972, petitioners owned federally tax-exempt securities totaling $129,000, and during the years 1973, 1974, and 1975, they made investments of $45,000 in each year in federally tax-exempt securities. On December 31, 1975, they owned a total of $245,000 in such securities. The record does not show that there was any correlation in time or otherwise between the investments in the tax-exempt securities and the interest-free loans.

In asking us to sustain the deficiencies, the Government recognizes that its position is adverse to *Dean v. Commissioner*, 35 T.C. 1083 (1961). It contends that *Dean* was wrongly decided and should be overruled. We reaffirm *Dean*, and hold further that, on this record, *Dean* is not rendered inapplicable by reason of petitioners' investments in federally tax-exempt securities.

(1) The Government's frontal attack upon *Dean* began in 1973 with the announcement of the Commissioner's "nonacquiescence" in *Dean*. 1973–2 C.B. 4. Thereafter, the first case to face the issue squarely in this Court in the context of a stockholder-officer relationship to the corporation was *Suttle v. Commissioner*, 37 T.C.M. 1638, 47 P-H Memo T.C. par. 78,393 (1978), which reaffirmed *Dean*. Cf. *Greenspun v. Commissioner*, 72 T.C. 931 (1979), on appeal (9th Cir., Nov. 20, 1979). *Suttle* has since been affirmed by the Fourth Circuit, 625 F. 2d 1127 (1980). Meanwhile, the issue was again presented to this Court in *Zager v. Commissioner*, 72 T.C. 1009 (1979), on appeal (5th Cir., Feb. 5, 1980). There, we traced the history of the problem back to the first of our modern revenue acts in 1913, and emphasized our conclusion to apply the principle of stare decisis. Our discussion of the matter in *Zager* is particularly pertinent and we quote extensively from our opinion in that case (72 T.C. at 1010–1012, 1013):

Our modern income tax laws have been in effect continuously since 1913, and the various applicable statutes, using one form of words or another, have characterized the income subject to tax in broad and sweeping terms. Yet, at the time *Dean* was presented to this Court, there was no indication that there

had previously ever been even a single instance in which the Government had taken the position, either in litigation (successfully or unsuccessfully) or by rule, regulation, or administrative practice in any manner, that an interest-free loan by a corporation to its stockholder-officers resulted in the realization of income which the statute sought to reach. Indeed, the position advocated in this respect by the Government in *Dean* would appear to have been nothing more than an afterthought. No such issue was raised in the deficiency notice or even in the answer as originally filed in response to the taxpayers' petition therein. The point was first raised in an amended answer and appears to have had its origin in a fortuitous dictum in a then-recent Memorandum Opinion of this Court involving gift taxes of the same taxpayers which had been promulgated several months prior to the filing of the amended answer. (See 35 T.C. at 1089.) The theory was further refined in the Government's brief.

The problems gave us much difficulty because there appeared superficially to be but little difference between the interest-free use of corporate funds and the rent-free occupancy of corporate property by a stockholder or officer that had been held to constitute a tax benefit the fair value of which was includable in gross income. Conceptually, it did seem that the same result should be reached in both types of cases. Yet, the fact that the Treasury had not theretofore—for some 48 years—attempted to treat as income the benefits attributable to such interest-free loans was highly troublesome. We searched for a distinction that would support the administrative practice which had endured for so long a period. And we found a difference in that if the taxpayer had undertaken to pay interest or rent, he would generally have been entitled to a deduction for the payment of interest but not for rent. Thus, the tax benefit resulting from the exclusion from gross income of any amount attributable to such an interest-free loan would be matched dollar for dollar by the tax benefit attributable to the interest deduction in the case of an interest-bearing loan, assuming of course that the interest were fixed at a fair rate. To be sure, there were peripheral situations in which the distinction would not hold, but in general, the neutralizing effect of the interest deduction did seem to afford a basis for supporting the differing treatment which the Government itself had long accorded to interest-free loans and rent-free use of property. In reaching our conclusion, we recognized that "the question may not be completely free from doubt" (35 T.C. at 1089), and our opinion, although reflecting the views of a majority of the Court, was not unanimous.

Notwithstanding the potential importance of *Dean*, the Government failed to pursue an appeal from our decision and accepted the result for a period of some 12 years thereafter. It was not until 1973 that the Commissioner announced his "nonacquiescence," 1973–2 C.B. 4, and mounted a campaign to have *Dean* overruled. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

the prior practice spanned a period of 60 years—from 1913 to 1973. There were undoubtedly at least many thousands of instances during this period when the issue could have been raised. We know that there are a great number of corporations that are wholly owned or subject to the control of a dominant stockholder. And we also know from the records in numerous cases that have been before us that the flow of funds—often on an informal basis—between

such stockholder and his corporation is a very common occurrence. Sometimes, notes are executed; at other times, there are merely book entries; and at still other times, there may be no documentation whatever. *Dean* gave effect to the administrative practice that had existed for 48 years as of that time in respect of the non-interest-bearing loans in such situations, and that practice continued thereafter for another 12 years until the Commissioner took his present position by publishing his "nonacquiescence." Moreover, although cogent theoretical arguments could be advanced both for and against the result reached in *Dean*, it has now been on the books for 18 years. Too much water has passed over the dam to warrant reexamining the situation judicially. We think that the application of the principle of stare decisis is peculiarly called for here, and that if a contrary result is deemed desirable, the appropriate remedy should be legislative rather than judicial.

We have since refused to reconsider *Dean* in several other cases. *Creel v. Commissioner*, 72 T.C. 1173, 1179 (1979), on appeal (5th Cir., Feb. 15, 1980); *Beaton v. Commissioner*, a Memorandum Opinion of this Court, 40 T.C.M. 1324, 1327, 49 P-H Memo T.C. par. 80,413, pp. 1779, 1780 (1980); *Parks v. Commissioner*, a Memorandum Opinion of this Court, 40 T.C.M. 1228, 1230, 49 P-H Memo T.C. par. 80, 382, p. 1682 (1980); *Estate of Liechtung v. Commissioner*, a Memorandum Opinion of this Court, 40 T.C.M. 1118, 49 P-H Memo T.C. par. 80,352, p. 1569 (1980); *Martin v. Commissioner*, a Memorandum Opinion of this Court, 39 T.C.M. 531, 535, 48 P-H Memo T.C. par. 79,469, p. 1833 (1979); cf. *Marsh v. Commissioner*, 73 T.C. 317, 326 (1979). We reach the same conclusion here. The problem is peculiarly one that calls for a legislative remedy, if one is thought to be appropriate, rather than a judicial departure from the principle of stare decisis.[1]

(2) The Government makes an alternative argument which in essence is that even if *Dean* is not overruled, it is distinguishable from the instant case because Mr. Baker's indebtedness to his corporation "was incurred or continued to carry or purchase tax-exempt securities"; that as a consequence, any interest that might be paid by him on such indebtedness would not be deductible by reason of section 265(2), I.R.C. 1954;[2] and that, therefore, the underlying basis for *Dean* would be absent here

---

[1]An additional ground for regarding the problem as legislative rather than judicial was pointed out in *Zager*, in that interest-free loans to officer-stockholders are akin to fringe benefits, the taxability of which is now the subject of congressional scrutiny. *Zager v. Commissioner*, 72 T.C. 1009, 1013–1014.

[2]SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.
   No deduction shall be allowed for—

thereby rendering that case inapplicable. The possibility that *Dean* might be distinguishable if section 265(2) were applicable was suggested in *Zager* (72 T.C. at 1012) as well as in *Greenspun* (72 T.C. at 948–950), but both opinions made clear that the matter would be decided only when we are confronted with a case specifically raising the issue.[3] We hold against the Government on this alternative issue.

In the first place, there is serious question whether the issue is properly before the Court. It was not mentioned either in the deficiency notice or in the pleadings, and it was first raised in the Government's brief. This case is thus procedurally in the same posture as *Estate of Liechtung v. Commissioner, supra,* where the Court declined to reach the issue in such circumstances.

In any event, section 265(2) does not appear to be applicable here. The stipulation of the parties explicitly states that "The money borrowed from the corporation was used to make estimated tax payments (Federal, State, and city)." And as noted above, the record does not show any correlation in time or otherwise between the corporate loans and the investments in the tax-exempt securities. Accordingly, it does not appear that such loan indebtedness was "incurred or continued to carry or purchase tax-exempt securities" within section 265(2). Although section 265(2) might be read to cover this situation, the courts have given it a restricted construction that calls for more than

* * * * * * *

(2) INTEREST.—Interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle.

[3]In presenting its principal argument that *Dean* should be overruled, the Government challenges the theory articulated in *Dean* that the deductibility of interest that might be payable on borrowed funds is a relevant consideration. It points out quite correctly that a deduction under section 163(a) for interest paid is a matter of legislative grace the right to which must be established under appropriate criteria, and that the question of what is to be included in income is a separate matter. However, there may well be a relationship between the two, and what we said in this connection in *Zager* (72 T.C. at 1012 n. 1) bears repetition here:

"The question, of course, is whether the benefit derived from the interest-free loan is to be treated as having the quality of realized income; but it is not accurate to suggest that the availability of a related deduction is wholly irrelevant in determining whether the benefit involved should be treated as realized income. Thus, the repayment of a loan is ordinarily considered as a return of capital and not as a receipt of income; but if the creditor has previously charged off that loan and taken a bad-debt deduction in a prior year, the subsequent repayment is includable in gross income. Of course, the analogy is not perfect, but it serves to indicate that the quality of a benefit or receipt as income may be affected by considerations extraneous to the inherent nature of the benefit or receipt itself."

the "mere simultaneous existence" of the taxpayer's indebtedness and his ownership of the tax-exempt securities. *Swenson Land & Cattle Co. v. Commissioner*, 64 T.C. 686, 695 (1975). The statute has been interpreted as requiring a "tighter nexus between the two," a "purposive connection" between the taxpayer's indebtedness and the ownership of the tax-exempt obligations. *Swenson Land & Cattle Co. v. Commissioner*, 64 T.C. at 696. See also *New Mexico Bancorporation v. Commissioner*, 74 T.C. 1342, 1352–1353 (1980). In view of the stipulation of the parties referred to above, the purpose of the tax-free loans was quite clearly to make payments on estimated taxes, and we cannot make the necessary finding as to the nexus between such loans and the tax-exempt securities that would bring section 265(2) into play here.

In order to give effect to petitioners' concession in respect of another issue,

*Decision will be entered under Rule 155.*

